USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1/12/2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 17 Civ. _____ (__) |
| Plaintiff, | |
| -against- | ECF CASE |
| SILVERSTEIN PROPERTIES, INC.; RIVER PLACE I, LLC; RIVER PLACE II HOLDINGS I LLC; and COSTAS KONDYLIS AND PARTNERS, LLP, | **CONSENT DECREE** |
| Defendants. | |

## INTRODUCTION

This Consent Decree is entered into between plaintiff the United States of America (the "United States"), and defendants Silverstein Properties, Inc., River Place I, LLC, and River Place II Holdings I LLC (together, the "Settling Defendants");

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act (the "FHA"), codified at 42 U.S.C. §§ 3601–3619; specifically, the United States' complaint in this Action, filed on January 5, 2017, alleges that the above-captioned defendants have engaged in a pattern or practice of discrimination, and have denied rights to a group of persons in a manner raising an issue of general public importance, including by failing to design and/or construct River Place and Silver Towers, each a residential apartment complex in midtown Manhattan, with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, River Place and Silver Towers are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

**A.**     **The Settling Defendants**

WHEREAS, Silverstein Properties, Inc. ("SPI") is a New York business corporation that, directly and/or operating through its subsidiaries and affiliates, developed, and in that capacity participated in, the design and construction of River Place and Silver Towers;

WHEREAS, River Place I, LLC, a New York limited liability company, owns, and in that capacity participated in, the design and construction of River Place;

WHEREAS, River Place II Holdings I LLC, a New York limited liability company, owns, and in that capacity participated in, the design and construction of Silver Towers;

**B.**     **The Architect Defendant**

WHEREAS, Costas Kondylis and Partners, LLP (the "Architect Defendant"), a New York limited liability partnership, drew the architectural plans for, and in that capacity participated in, the design and construction of River Place and Silver Towers;

WHEREAS, the Architect Defendant is not a party to this Consent Decree;

**C.**     **The Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are "Covered Multifamily Dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within

2

such dwellings contain the following features of adaptive design: (I) an accessible route into and

through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental

controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation

of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair

can maneuver about the space. 42 U.S.C. § 3604(f)(3)(c) (these provisions and features are

referred to herein as the "Accessible Design Requirements");

**D.     Conditions at River Place**

WHEREAS, River Place is a residential apartment building located at 1 River Place

in New York, New York. The complex consists of a tower with elevator access and contains 920

covered multifamily dwelling units, as well as public and common-use areas including a leasing

office, landscaped public plaza, retail space, sundeck, swimming pool, fitness center, laundry

room, children's playroom, and conference/business center;

WHEREAS, the United States inspected River Place in August 2014 and specifically

identified, among other things, the following conditions at River Place that the United States

alleges, and the Settling Defendants deny, fail to meet the Accessible Design Requirements:

- Excessive closing speed and excessive force are required to operate the entrance door
  to the leasing office;

- There is an excessively high threshold at entrance to the leasing office bathroom;

- There are excessively high thresholds at entrances to individual units and at entrances
  to bathrooms within individual units;

- Kitchen ranges, sinks, refrigerators in individual units lack sufficient clearance for
  persons who use wheelchairs;

- There is insufficient clear opening width at entrances to individual units;

- There is insufficient clear opening width of bedrooms, bathrooms, and walk-in closet

3

doors within individual units;

- There is insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;

- Rear grab bar location behind toilets in individual-unit bathrooms is obstructed by countertops;

- The ramp leading to the observation deck has an excessively steep running slope and lacks handrail;

- There are excessively high thresholds at entrances to laundry rooms;

- There are excessively high thresholds at entrances to trash chute rooms;

- Excessive opening force is required to operate the entrance door to the activity center;

- There are excessively high thresholds at entrances to the toilet rooms in the activity center;

- Excessive force is required to operate the entrance door to children's playroom; and

- Mailboxes are mounted too high for persons who use wheelchairs.

**E.    Conditions at Silver Towers**

WHEREAS, Silver Towers is a residential apartment building located at 600 West 42nd Street in New York, New York.  The complex consists of two towers with elevator access and contains 1355 covered multifamily dwelling units, as well as public and common-use areas including a lobby, bicycle storage rooms, laundry rooms, parking garage valet station, workout room, conference room, and business center;

WHEREAS, the United States inspected Silver Towers in July 2016 and specifically identified, among other things, the following conditions at Silver Towers that the United States alleges, and the Settling Defendants deny, fail to meet the Accessible Design Requirements:

- Excessive force is required to operate entrance door to North and South Tower

4

lobbies, and the reception desk is excessively high;

- Excessive closing speed and excessive force are required to operate entrance door to North and South Tower bicycle storage rooms;

- North and South Tower laundry room sinks lack sufficient clearance and pipe insulation;

- Excessive closing speed and excessive force are required to operate the entrance door to laundry room cellar;

- There are excessively high thresholds at entrances to individual units and at entrances to bathrooms within individual units;

- There is insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;

- There are excessively high thresholds at entrances to trash chute rooms;

- Excessive force is required to operate entrance doors in South Tower men's and women's changing rooms;

- Maneuvering space inside entrance door to South Tower yoga room is obstructed;

- There are excessively high threshold and excessive force required to operate entrance door to conference room; and

- Excess force is required to operate entrance door to South Tower leasing office.

**F.  Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, the parties' entry into this Consent Decree is not intended to and does not limit the Settling Defendants, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract, or other relief for any related reason from any individual or entity involved in the design or construction of the property that is the subject of this Consent Decree, including but not limited to the Architect Defendant;

WHEREAS, the Settling Defendants agree to cause modifications to be made to River Place and Silver Towers as set forth herein;

WHEREAS, pursuant to Section IV of this Consent Decree, the United States and SPI have agreed to a process for identifying the retrofits to be made at a certain other rental property developed by SPI, identified on Appendix E to this Consent Decree; and

WHEREAS, the parties agree to the entry of this Consent Decree;

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## I. GENERAL INJUNCTION

1.      The Settling Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604.

## II. RETROFITS AT RIVER PLACE

2.      The United States alleges that River Place was not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "FHA Guidelines"). Without admitting liability, SPI and River Place I, LLC agree to address the conditions alleged to be violations of the FHA by causing the modifications set forth in Appendices A-1 and B-1 annexed hereto to be made.

**A.     Modifications to the Public and Common Use Areas**

3.     SPI and River Place I, LLC acknowledge that the public and common use areas at River Place do not meet all of the requirements of any one of the ten safe harbors recognized by the U.S. Department of Housing and Urban Development ("HUD") for compliance with the FHA. To the extent that they have not already done so, SPI and River Place I, LLC agree to cause the public and common use areas of River Place to be modified by taking the actions described herein.

4.     As soon as reasonably possible, but no later than twelve (12) months after the entry of this Consent Decree, SPI and/or River Place I, LLC shall finish the retrofits listed in Appendix A-1. SPI and/or River Place I, LLC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

5.     Within fifteen (15) days of the entry of this Consent Decree, SPI and/or River Place I, LLC shall provide written notices to all residents at River Place stating that the retrofits required by this Consent Decree will be performed to the public and common use areas at River Place. Such notice shall conform to Appendix C and may be delivered electronically or in hard copy.

6.     SPI and/or River Place I, LLC shall certify to the United States in writing that the notices required by Paragraph 5 have been distributed, and shall specify the manner in which they were distributed, no later than fifteen (15) days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

**B.     Modifications to Dwelling Unit Interiors**

7.     SPI and River Place I, LLC acknowledge that the dwelling unit interiors of River Place do not meet all of the requirements of any one of the ten safe harbors recognized by HUD for compliance with the FHA. SPI and River Place I, LLC agree to cause the dwelling unit

7

interiors at River Place to be modified by taking the actions described below and in Appendix B-1.

8.      For each unit at River Place listed in Appendix B-1, as soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree (unless otherwise specified in Appendix B-1), SPI and/or River Place I, LLC shall finish the retrofits listed in Appendix B-1. SPI and River Place I, LLC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

9.      Within thirty (30) days from the date of the entry of this Consent Decree, SPI and/or River Place I, LLC shall inform each resident that resides in an individual dwelling unit at River Place that is subject to being retrofitted: (1) the United States has alleged that certain features of the resident's unit do not meet the accessible and adaptive design requirements of the FHA; (2) to settle this lawsuit, SPI and River Place I, LLC agreed to cause retrofits of certain features of River Place to be completed to make them more accessible; (3) additional features of accessible and adaptive design can be retrofitted in the unit upon request of the resident or prospective resident; (4) the retrofits offered will be at no cost to the unit resident or prospective resident; and (5) the scheduling of the retrofits will take into account the preferences and convenience of the resident or prospective resident and that relocation costs, if any, will be provided in advance.[1] The notice shall be substantially in the form of Appendix D and may be delivered electronically or in hard copy.

10.      SPI and/or River Place I, LLC shall certify to the United States in writing that the notices described in Paragraph 9 have been distributed, and shall specify the manner in which

---

[1]    For purposes of this Consent Decree, "prospective resident" shall mean any individual who has taken a tour of a unit and/or applied to lease a unit, but has not yet signed a lease. The scheduling of mandatory retrofits in individual units need not take into account the preferences and convenience of a prospective resident who has not yet signed a lease.

they were distributed, within fifteen (15) days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

### III. RETROFITS AT SILVER TOWERS

11.   The United States alleges that Silver Towers was not designed or constructed in accordance with the FHA or the FHA Guidelines. Without admitting liability, SPI and/or River Place II Holdings I LLC agree to address the conditions alleged to be violations of the FHA by causing the modifications set forth in Appendices A-2 and B-2 annexed hereto to be made.

**A.    Modifications to the Public and Common Use Areas**

12.   SPI and River Place II Holdings I LLC acknowledge that the public and common use areas at Silver Towers do not meet all of the requirements of any one of the ten safe harbors recognized by HUD for compliance with the FHA. To the extent that they have not already done so, SPI and River Place II Holdings I LLC agree to cause the public and common use areas of Silver Towers to be modified by taking the actions described herein.

13.   As soon as reasonably possible, but no later than twelve (12) months after the entry of this Consent Decree, SPI and/or River Place II Holdings I LLC shall finish the retrofits listed in Appendix A-2. SPI and/or River Place II Holdings I LLC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

14.   Within fifteen (15) days of the entry of this Consent Decree, SPI and/or River Place II Holdings I LLC shall provide written notices to all residents at Silver Towers stating that the retrofits required by this Consent Decree will be performed to the public and common use areas at Silver Towers. Such notice shall conform to Appendix C and may be delivered electronically or in hard copy.

15.   SPI and/or River Place II Holdings I LLC shall certify to the United States in writing that the notices required by Paragraph 14 have been distributed, and shall specify the

9

manner in which they were distributed, no later than fifteen (15) days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

## B.    Modifications to Dwelling Unit Interiors

16.    SPI and River Place II Holdings I LLC acknowledge that the dwelling unit interiors of Silver Towers do not meet all of the requirements of any one of the ten safe harbors recognized by HUD for compliance with the FHA.  SPI and River Place II Holdings I LLC agree to cause the dwelling unit interiors at Silver Towers to be modified by taking the actions described below and in Appendix B-2.

17.    For each unit at Silver Towers listed in Appendix B-2, as soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree (unless otherwise specified in Appendix B-2), SPI and/or River Place II Holdings I LLC shall finish the retrofits listed in Appendix B-2.  SPI and River Place II Holdings I LLC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

18.    Within thirty (30) days from the date of the entry of this Consent Decree, SPI and/or River Place II Holdings I LLC shall inform each resident that resides in an individual dwelling unit at Silver Towers that is subject to being retrofitted: (1) the United States has alleged that certain features of the resident's unit do not meet the accessible and adaptive design requirements of the FHA; (2) to settle this lawsuit, SPI and River Place II Holdings I LLC agreed to cause retrofits of certain features of Silver Towers to be completed to make them more accessible; (3) additional features of accessible and adaptive design can be retrofitted in the unit upon request of the resident or prospective resident; (4) the retrofits offered will be at no cost to the unit resident or prospective resident; and (5) the scheduling of the retrofits will take into account the preferences and convenience of the resident or prospective resident and that

relocation costs, if any, will be provided in advance. The notice shall be substantially in the form of Appendix D and may be delivered electronically or in hard copy.

19.     SPI and/or River Place II Holdings I LLC shall certify to the United States in writing that the notices described in Paragraph 18 have been distributed, and shall specify the manner in which they were distributed, within fifteen (15) days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

## IV. ADDITIONAL PROPERTY

20.     In addition to River Place and Silver Towers, SPI has designed and constructed for occupancy after March 13, 1991, a multifamily housing complex, which is identified in Appendix E. That property shall be referred to as the "Additional Property."

21.     No later than thirty (30) days after the issuance of the certificate of occupancy for the Additional Property, unless otherwise agreed to by the parties or ordered by the Court, SPI shall retain one or more licensed design professionals with expertise regarding the FHA and the FHA's Accessible Design Requirements ("Surveyor(s)"), approved by the United States, to survey the Additional Property to determine what actions, if any, must be taken to bring that property into compliance with the FHA's Accessible Design Requirements.

22.     For purposes of conducting surveys and reporting survey results as required by Section IV of this Consent Decree, the Surveyor(s) shall measure and report compliance with the FHA by reference to one of the following standards (each a "Standard"), where such a single Standard has been used in its entirety: (*i*) the FHA Guidelines; (*ii*) a standard designated as an FHA safe harbor by the Department of Housing and Urban Development; or *(iii)* a recognized, comparable, objective standard of accessibility that has been found by this District Court or the Second Circuit to incorporate the requirements of the Fair Housing Act.

23.     The Surveyor(s) shall review applicable plans for the Additional Property and physically inspect (*i*) all common and public use areas at the Additional Property and (*ii*) an appropriate number of units at the Additional Property that, based on the Surveyor(s)' review of the architectural or site plans, drawings, or blueprints, and the Surveyor(s)' professional judgment, contain a representative sample of the in-unit features at that Additional Property.

24.     SPI shall provide the Surveyor(s) with the best available information regarding the size and location of grab bar reinforcements.  Such information shall include a physical inspection of at least one dwelling unit bathroom within the Additional Property to ascertain the presence and length of grab bar reinforcements.  Such information shall also include either applicable plans of the Additional Property showing the size and location of grab bar reinforcements or a certification from a person involved with construction of the Additional Property that similar reinforcements were installed in all other units in the Additional Property. Neither Silverstein nor the Surveyor(s) will be required to use destructive testing to comply with this paragraph.

25.     Within ninety (90) days of the issuance of the certificate of occupancy for the Additional Property, unless otherwise agreed to by the parties or ordered by the Court, SPI shall provide the United States with the date of the survey of the Additional Property, along with a detailed description of the scope and methodology of the survey, including how the Surveyor(s) will identify and survey representative unit types to ensure that all potential FHA violations are identified in accordance with this Consent Decree, and with survey instructions developed by SPI and approved by the United States.  No survey may be commenced absent the approval of the United States as to the schedule, scope, and methodology of the survey.  The survey must include photographic documentation of any feature that does not comply with the requirements of the FHA.  With respect to each feature covered by the FHA that was not constructed in

12

compliance with the FHA, the survey must indicate whether the feature was designed in compliance with the FHA according to available plans.

26. SPI shall complete the survey of the Additional Property within nine (9) months of the issuance of the certificate of occupancy for the Additional Property, unless otherwise agreed to by the parties or ordered by the Court. The United States and SPI each shall have the right to accompany the Surveyor(s) on his or her survey of the property, and the Surveyor(s) shall provide the United States with reasonable notice of the survey, at least thirty (30) days in advance of the survey. For the Additional Property, within thirty (30) days following the completion of the physical survey of that property, the Surveyor(s) shall provide to the United States and SPI a detailed written report setting out the scope and methodology of the survey and all of the information set forth in paragraph 24 above, including details and photographic documentation regarding any features that do not comply with the FHA and, for each feature covered by the FHA that was not constructed in compliance with the FHA, details regarding whether the feature was designed in compliance with the FHA according to available plans.

27. Within ninety (90) days of receipt of the report of the Surveyor(s), unless otherwise agreed to by the parties or ordered by the Court, with respect to the Additional Property, SPI shall submit to the United States a proposal for performing retrofits for the conditions identified by the Surveyor(s). To the extent that a condition identified in Appendix B-1 or B-2 to this Consent Decree is also identified at the Additional Property, SPI shall perform the retrofit for that condition as set forth in the relevant Appendix. If, after expeditious and good faith negotiations, the parties are unable to resolve any differences concerning appropriate modifications, either party may raise the matter to the Court for resolution. SPI shall not be deemed to have admitted liability based on its proposing or making a retrofit to any condition in the Additional Property.

28.     Within sixty (60) days of receipt of the retrofit proposal for the Additional Property, unless otherwise agreed to by the parties or ordered by the Court, the United States shall notify SPI in writing of any objections to the proposal. If there are no written objections, the United States will be deemed to have approved of the retrofit proposal and SPI shall proceed with the modifications as specified. If the United States provides objections, the parties shall endeavor to expeditiously and in good faith resolve any objections, after which SPI shall, within thirty (30) days submit a revised retrofit proposal, to which the United States shall have thirty (30) days to provide written objections; if there are no objections, the United States will be deemed to have approved of the revised retrofit proposal, and SPI shall proceed with the modifications it specified in the revised retrofit proposal. If, after expeditious and good faith negotiations, the parties are unable to resolve any differences concerning appropriate modifications, either party may raise the matter to the Court for resolution.

29.     Unless otherwise agreed to by the parties or ordered by the Court, pursuant to the process described in paragraphs 20-28 of this Consent Decree, SPI shall make the retrofits to common or public use areas of the Additional Property within twelve (12) months of the United States' approval of a retrofit proposal for that property. SPI shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

30.     Unless otherwise agreed to by the parties or ordered by the Court, SPI shall cause to be performed all retrofits to individual dwelling units no later than the earliest of (*i*) prior to the re-occupancy of a vacated unit, (*ii*) ten (10) days from the written request of any resident or prospective resident of the unit, or (*iii*) the expiration of the Consent Decree, provided that the resident reasonably accommodates the retrofits to the dwelling unit. SPI shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

14

31.     Within thirty (30) days of the United States' approval of a retrofit proposal for the

Additional Property, unless otherwise agreed to by the parties or ordered by the Court, SPI shall

inform each resident or prospective resident who resides, or who seeks to reside, in an individual

dwelling unit that is subject to being retrofitted in any manner set forth in the applicable retrofit

proposal that (1) the United States has alleged that certain features of the resident's unit do not

meet the accessible and adaptive design requirements of the FHA; (2) to settle this lawsuit, SPI

agreed to cause retrofits of certain features of the Additional Property to be completed to make

them more accessible; (3) additional features of accessible and adaptive design can be retrofitted

in the unit upon request of the resident or prospective resident; (4) the retrofits offered will be at

no cost to the unit resident or prospective resident; and (5) the scheduling of the retrofits will

take into account the preferences and convenience of the resident or prospective resident and that

relocation costs, if any, will be provided in advance.  The notice(s) shall be substantially in the

form of Appendix D, modified as appropriate to reflect the particular property at issue and the

applicable retrofits.

32.     SPI shall certify to the United States in writing that the notices described in

Paragraph 31 for the Additional Property have been distributed and shall specify the manner in

which they were distributed as part of its annual reporting requirement.  Such certification shall

include the names and addresses of the persons to whom the notices were distributed.

33.     SPI shall pay all costs associated with the surveys and modifications/retrofits to

the Additional Property, without prejudice to its ability to seek contribution or indemnification

from other sources.

## V. PER DIEM FOR DISPLACEMENT

34.     In the event that a resident of a unit within River Place, Silver Towers, or the

Additional Property that is scheduled to undergo a modification is dislocated from his or her unit

for more than fourteen (14) consecutive hours, SPI shall cause such resident to be paid, *pro rata*, the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day or half-day of undue inconvenience or hardship. Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations while dislocated.

## VI. No Adverse Action

35.     Neither present nor future residents of River Place, Silver Towers, or the Additional Property may be charged any additional rent, deposit, fee, or other consideration for the dwelling units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits. The Settling Defendants shall take no adverse action against any present or future resident of River Place, Silver Towers, or any Additional Property because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Consent Decree. Nothing in this paragraph shall restrict or impede the Settling Defendants' rights to continue, in a nondiscriminatory manner, to lawfully establish and raise rents consistent with their business goals and obligations and with market conditions, including increasing rents after the expiration of a lease due to an increase in market value of the unit, whether or not such increase is on account of upgrades to such unit (other than retrofits required under this Consent Decree) done at or about the same time as retrofits required under this Consent Decree.

## VII. Neutral Inspector

36.     SPI, River Place I, LLC, and/or River Place II Holdings I LLC shall enter into a contract with a neutral inspector(s) approved by the United States (the "Inspector(s)") to conduct on-site inspections of all retrofits performed under this Consent Decree to determine whether

16

modifications have been made in compliance with the specifications in Appendices A-1 and B-1 at River Place, the specifications in Appendices A-2 and B-2 at Silver Towers, and the specifications in the approved retrofit proposal for the Additional Property. The Inspector(s) shall have expertise in the design and construction requirements of the FHA. SPI, River Place I, LLC and/or River Place II Holdings I LLC may, subject to approval by the United States, elect to retain the Surveyor(s) as the Inspector(s).

37.     The Inspector(s) may, upon request of SPI, River Place I, LLC, and/or River Place II Holdings I LLC, review and comment upon the sufficiency of all proposed retrofits in writing in advance of any retrofit by SPI, River Place I, LLC, and/or River Place II Holdings I LLC, but such review and comment shall be completed no later than fourteen (14) days after the request.

38.     An initial inspection of the Additional Property shall take place within thirty (30) days of the completion of the retrofits (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree) set forth in the applicable approved retrofit proposal, or as soon as practicable thereafter.

39.     An initial inspection of River Place shall take place within sixty (60) days, or as soon as practicable thereafter, of the completion of all of the retrofits set forth in Appendices A-1 and B-1 (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree).

40.     An initial inspection of Silver Towers shall take place within sixty (60) days, or as soon as practicable thereafter, of the completion of all of the retrofits set forth in Appendices A-2 and B-2 (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree).

41.     With regard to retrofits for River Place, Silver Towers, and the Additional Property that are required to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree, an initial inspection of those retrofits shall take place within thirty (30) days after three (3) years have passed from the entry of this Consent Decree.

42.     For purposes of efficiency, SPI, River Place I, LLC, and/or River Place II Holdings I LLC may, with the approval of the United States, schedule the initial inspection of multiple properties required by Section VII of this Consent Decree in combination with each other.

43.     For each initial inspection, SPI, River Place I, LLC, and/or River Place II Holdings I LLC shall give the United States at least twenty-one (21) days' prior notice of the inspection. The United States and the Settling Defendants each shall have the right to have a representative present for the inspection.

44.     The Inspector(s) shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to SPI, River Place I, LLC, and/or River Place II Holdings I LLC and to the United States.[2] The report shall state whether the retrofits required by the applicable Appendix or approved retrofit proposal have been completed and shall list any required retrofits that were not completed.

45.     If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, or retrofit proposals, SPI, River Place I, LLC, and/or River Place II Holdings I LLC shall correct any deficiencies within sixty (60) days and shall pay

---

[2]     For purposes of this Consent Decree, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007. Notices provided to the Settling Defendants shall be addressed to Lawrence Spiegel, c/o Skadden Arps, 4 Times Square, New York, NY 10036. Electronic courtesy copies also shall be delivered to the undersigned Assistant United States Attorneys and counsel for the Settling Defendants.

for another inspection by the same Inspector(s) to certify that the deficiencies have been corrected. This process shall continue until the Inspector(s) certifies that all of the necessary modifications have been made. SPI, River Place I, LLC, and/or River Place II Holdings I LLC shall pay all of the Inspector(s)'s reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector(s)'s findings. Upon reasonable notice, representatives of the United States shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Consent Decree, to ensure compliance, and an expert retained by SPI, River Place I, LLC, and/or River Place II Holdings I LLC also may attend any such inspection.

46.     Nothing in this Consent Decree shall be read to relieve SPI, River Place I, LLC, and/or River Place II Holdings I LLC of the obligation to schedule inspections and/or correct deficiencies as set forth in this Section (including, but not limited to, inspection of the retrofits that SPI, River Place I, LLC, and/or River Place II Holdings I LLC are required to make prior to the expiration of the Consent Decree) even if such obligations extend beyond the duration of this Consent Decree.

## VIII. IMPEDIMENTS TO PERFORMANCE

47.     In the event that any act or omission beyond the control of the Settling Defendants, and occurring without its fault or negligence, affects the performance of any requirement in Sections II, III or IV of the Consent Decree, the Settling Defendants and the United States shall endeavor, in good faith, to determine whether modifications to this Consent Decree are necessary and, if so, to seek jointly such modification from the Court. If such efforts are unsuccessful, either party may seek relief from the Court. In particular, if a resident at River Place, Silver Towers, or the Additional Property refuses (whether lawfully or not) to vacate a unit so that required retrofits can be made, SPI, River Place I, LLC, or River Place II Holdings I

LLC shall make the retrofit once that resident terminates his or her lease, and this obligation shall survive beyond the expiration of this Consent Decree. Nothing herein shall be construed as requiring any of the Settling Defendants to bring a lawsuit against a resident who refuses to allow a retrofit to that resident's unit, as specified in Sections II, III or IV of this Consent Decree; and nothing herein shall be construed as requiring any of the Settling Defendants to perform any act beyond the expiration of this Consent Decree except as specified in this Paragraph and Paragraphs 41 and 46 above.

## IX. TRANSFER OF INTEREST IN PROPERTIES

48.     The sale or transfer of ownership, in whole or in part, by a Settling Defendant of their interest(s), if any, in River Place, Silver Towers, or the Additional Property shall not affect the continuing obligations of that Settling Defendant to retrofit, and/or conduct or allow inspections or surveys of, River Place, Silver Towers, and the Additional Property, as specified in this Consent Decree, unless that Settling Defendant obtains in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Consent Decree to make retrofits and allow or conduct inspections or surveys as set forth in this Consent Decree, and will be subject to the jurisdiction of this Court.

49.     Should a Settling Defendant decide to sell or transfer an ownership interest in River Place, Silver Towers, or the Additional Property, in whole or in part, prior to the completion of the retrofits specified in this Consent Decree for these buildings, that Settling Defendant shall, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Consent Decree and written notice that the property is subject to this Consent Decree, including specifically the obligation of that Settling Defendant to *(i)* complete required retrofit work and allow inspections, or *(ii)* assign such obligations to the purchaser or

20

transferee by obtaining the purchaser or transferee's commitment to be bound by this Order, subject to the jurisdiction of this Court; and (b) provide to the United States, by facsimile and first-class mail, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

## X. Non-Discrimination in Other Design and Construction

50.    Pursuant to this Consent Decree, Settling Defendants shall design and construct all new Covered Multifamily Dwellings in full compliance with a Standard.[3] During the term of this Consent Decree, upon reasonable notice to the Settling Defendants, the United States will be permitted full access to such properties to inspect for compliance with such standards, rules, and laws.

51.    For each Covered Multifamily Dwelling that they construct during the term of this Consent Decree, Settling Defendants shall retain an FHA compliance consultant (the "FHA Consultant") to help ensure that the as-constructed features at such property comply with the FHA's Accessible Design Requirements. Settling Defendants shall direct their employees, agents, and/or contractors to seek the FHA Consultant's advice regarding the selection of appliances (*e.g.*, refrigerators and ranges) and fixtures (*e.g.*, doors, thresholds, and lavatories), the effect of deviations from the architects' plans on the accessibility of conditions at the property, as well as other issues that arise during construction that affect accessibility. Further, prior to the completion of construction of each building, Settling Defendants shall arrange for the FHA Consultant to conduct a visit of the building to identify any construction issues that may result in inaccessible conditions and recommend appropriate solutions.

---

[3] Nothing in Section X shall be construed to impose any additional obligation with respect to the Additional Property.

52.    The agreement or contract between Settling Defendants and the FHA Consultant shall reference the fact that the FHA Consultant is being retained pursuant to this Consent Decree. Further, within thirty (30) days of retaining the FHA Consultant, Settling Defendants shall provide a copy of this Consent Decree to the FHA Consultant and secure the signed statement from the FHA Consultant acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

53.    During the term of this Consent Decree, Settling Defendants shall submit, on an annual basis, a certification to the counsel for the United States affirming that they have retained an FHA Consultant for each Covered Multifamily Dwelling under construction during that year and specifying each covered multifamily dwelling for which an FHA Consultant was retained by Settling Defendants to provide advice and the identity (and affiliation, if applicable) of the FHA Consultant. Settling Defendants shall provide this certification within fifteen (15) days of the end of each 12-month period from the entry of this Consent Decree.

54.    For the duration of this Consent Decree, Settling Defendants shall maintain, and provide to the United States upon request, the following information and statements regarding any Covered Multifamily Dwelling intended to be designed, and/or constructed in whole or in part, by any one of them, including but not limited to any Covered Multifamily Dwelling in which any of the Settling Defendants has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or more ownership share:

- the name and address of the project;
- a description of the project and the individual residential units;
- the name, address, and telephone number of the civil engineer(s) involved with the project, to the extent the information is available;

- a statement from the civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the FHA and in the field of accessible site design, certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply;[4]

- the name, address and telephone number of the architect(s) who are employed or retained by SPI and are involved with the project;

- a statement from all architect(s) who are employed or retained by SPI and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the FHA Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

55.   If the engineering documents or architectural plans referred to in Paragraph 54 are revised, and the revisions could have any impact on whether the dwellings or complex complies with the FHA, SPI shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by SPI and are involved with the project, as applicable, that all specifications in the revised engineering

---

[4]   Settling Defendants shall provide such a statement from the civil engineers, if any, that they employ or retain for the project. Settling Defendants shall submit a request, in writing, for such a statement to any other civil engineers involved with the project but who are not employed or retained by the Settling Defendants, and shall forward any response to the United States upon receipt.

documents or architectural plans, as pertinent, comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

## XI. PAYMENTS TO AGGRIEVED PERSONS

56.    Within thirty (30) days of entry of this Consent Decree, SPI shall deposit in an interest-bearing account the sum of FOUR HUNDRED AND EIGHTY THOUSAND DOLLARS ($480,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of Settling Defendants' allegedly discriminatory housing practices regarding River Place, Silver Towers, and/or the Additional Property.  This deposited money, plus any accrued interest, shall be referred to as the "Initial Settlement Fund."

57.    Within thirty (30) days of the entry of this Consent Decree, SPI shall cause to be published the notice at Appendix F, entitled "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at River Place and Other Rental Buildings" (the "Notice"), informing readers of the availability of compensatory funds.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in (*i*) *New York Times* and (*ii*) either the *New York Daily News* or *New York Post*.  The three publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday (or Saturday, if the newspaper is not published on Sunday).  Within thirty (30) days of each publication of the Notice in a newspaper SPI shall provide copies of the publication containing the Notice to the United States.

58.    Within thirty (30) days of entry of this Consent Decree, SPI shall cause to be placed on the website http://www.riverplacenyc.com/ a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF").  The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at River Place," and should appear on the upper half of the website, in a conspicuous font style and color, in a font size no

smaller than the font size for any of the terms "Availabilities," "Apartment Features," "Services & Amenities," "Events & Community," "Neighborhood," and "Contact" as they appeared on the aforementioned website as of _____, 2016.

59.     Within thirty (30) days of entry of this Consent Decree, SPI shall cause to be placed on the website http://www.silvertowers.com/ a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF").  The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at Silver Towers," and should appear on the upper half of the website, in a conspicuous font style and color, in a font size no smaller than the font size for any of the terms "Availabilities," "Apartment Features," "Services & Amenities," "Events & Community," "Neighborhood," and "Contact" as they appeared on the aforementioned website as of _____, 2016.

60.     Within sixty (60) days of the entry of this Consent Decree, SPI, River Place I, LLC, and/or River Place II Holdings I LLC shall send a copy of the Notice to each of the following organizations:

> Brooklyn Center for Independence of the Disabled
> 27 Smith Street, Suite 200
> Brooklyn, New York  11201;
>
> Bronx Independent Living Services
> 4419 Third Avenue, Suite 2C
> Bronx, New York  10457;
>
> Center for Independence of the Disabled, NY
> 841 Broadway, #301
> New York, New York 10003;
>
> Disability Law Center at New York Lawyers for the Public Interest
> 151 W. 30th Street, 11th Floor
> New York, New York 10001;
>
> Disability Rights Advocates
> 1560 Broadway, 10th Floor
> New York, New York 10036;

Fair Housing Justice Center
30-30 Northern Boulevard, Suite 302
Long Island City, New York 11101;

Harlem Independent Living Center
289 St. Nicholas Avenue, Suite 21, Lower Level
New York, New York 10027;

The Legal Aid Society of New York
199 Water Street
New York, New York 10038;

Legal Services NYC
350 Broadway, Sixth Floor
New York, New York 10016;

MFY Legal Services, Inc.
299 Broadway
New York, New York 10007; and

United Spinal Association
75-20 Astoria Blvd.
Jackson Heights, New York 11370.

61.    Within ninety (90) days of the entry of this Consent Decree, SPI shall cause to be sent, by first-class mail, postage pre-paid, a copy of the Notice to each past or present resident at River Place, Silver Towers, and the Additional Property.  For past residents, SPI will have complied with the requirements of this paragraph by mailing such notice to the forwarding address provided by the former resident at the time the former resident moved out of River Place, Silver Towers, or the Additional Property.  Within one hundred twenty (120) days of entry of this Consent Decree, SPI shall certify to the United States that the Notices have been sent.

62.    The United States may make its own efforts to locate and provide notice to potential aggrieved persons.

63.    The Settling Defendants shall permit the United States, upon reasonable notice, to review any non-privileged records that may reasonably facilitate its investigations to locate

allegedly aggrieved persons and make determinations regarding their potential claims. In addition, the Settling Defendants shall identify to the United States any allegedly aggrieved persons or any past, present, or prospective residents of River Place, Silver Towers, or the Additional Property who have disabilities or regular guests with disabilities, to the extent that the Settling Defendants or their employees or agents at River Place, Silver Towers, or the Additional Property, possess the information required to make such identifications.

64.    The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person. The United States will inform the Settling Defendants in writing of each of its determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim. If the United States determines that the Initial Settlement Fund is insufficient to compensate the aggrieved persons at River Place, Silver Towers, and the Additional Property, the United States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a total amount exceeding the amount in the Initial Settlement Fund, but not exceeding NINE HUNDRED SIXTY THOUSAND DOLLARS ($960,000).

65.    If a Settling Defendant disputes the amount of or entitlement to a payment to an aggrieved person, the Settling Defendant shall, within twenty (20) days of receiving notice of a determination from the United States (a "Determination"), provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim. The parties may agree to extend the time to object to any Determination for good cause shown. The United States shall give due consideration to any objections it receives from a Settling Defendant and shall submit to them, following any objection, its reconsidered determination (a "Reconsidered Determination"), in writing, setting

27

forth the aggrieved person and the amount that the aggrieved person shall be paid. If a Settling

Defendant disputes the Reconsidered Determination, it may file an objection with the Court,

which may sustain or overrule the objection.

66.    No later than thirty (30) days after receiving a Determination to which no objection

has been made, fifteen (15) days after receiving a Reconsidered Determination to which no

objection has been filed with the Court, or fifteen (15) days after any decision by the Court

overruling a filed objection, whichever is earliest, the Settling Defendants shall deliver to the

United States (or as directed by the Court, as applicable) checks payable to aggrieved persons in

the amounts identified by the United States. In no event shall the aggregate of all such checks

exceed the amount of NINE HUNDRED SIXTY THOUSAND DOLLARS ($960,000),

including accrued interest. No aggrieved person shall be paid until he/she has executed and

delivered to the United States and the Settling Defendants the release at Appendix G.

67.    No adverse action shall be taken against any person because such person cooperates

with the United States in its investigations, makes a claim, or seeks to make a claim under

Section XI of this Consent Decree.

68.    In the event that less than the total amount in the Initial Settlement Fund, including

accrued interest, is distributed to aggrieved persons, and after the United States determines that

no further aggrieved persons will be identified, then, no later than the earlier of (a) when the

United States determines that no further aggrieved persons will be identified, or (b) the

expiration of this Consent Decree, any remainder in the Initial Settlement Fund shall be, subject

to the approval of the Court, distributed to a qualified organization(s) for the purpose of

conducting fair housing enforcement-related activities in New York City (the "Qualified

Organization(s)"). Before selecting the Qualified Organization(s), SPI will obtain a proposal

from the organization(s) on how the funds will be used consistent with the above-stated

purposes, submit such proposal to the United States, and consult with and obtain the non-objection of the United States. The Qualified Organization(s) selected by SPI must not be related to SPI or SPI's subsidiaries or affiliates. The United States may request modification of the proposal before not objecting to SPI's selection of the Qualified Organization(s). Within fifteen (15) days of the United States's non-objection to the Qualified Organization(s) selected by SPI, the parties shall move the Court to order the distribution of the amount remaining in the Initial Settlement Fund. The parties shall provide the Court with information regarding how the proposed Qualified Organization(s) meet the requirements set forth in this paragraph. SPI shall distribute the funds in a manner directed by the Court after the United States determines that no further aggrieved persons will be identified. SPI shall also require that each Qualified Organization receiving funds to submit to SPI and the United States a report within one year of receipt of funds, and every year thereafter until the funds are exhausted, detailing that the funds are utilized for the purposes identified in this paragraph. In the event that any Qualified Organization does not provide such a report, SPI shall require that the funds be returned for redistribution to other organization(s) to be used for the purposes set forth in this paragraph.

## XII. CIVIL PENALTIES

69. Within thirty (30) days of the date of the entry of this Consent Decree, SPI shall pay a civil penalty of FIFTY THOUSAND DOLLARS ($50,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. SPI shall pay said sum by submitting a check made payable to the "United States of America" to the United States.

## XIII. EDUCATIONAL PROGRAM

70. Within ninety (90) days of the entry of this Consent Decree, each Settling Defendant shall provide a copy of this Consent Decree to their agents and employees materially involved in the design or construction of River Place, Silver Towers, or the Additional Property

and obtain from each such agent or employee a statement acknowledging that he or she has received the Consent Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

71.   During the term of this Consent Decree, any new employee, agent, or supervisor of any Settling Defendant who will have supervisory authority over the design or construction of Covered Multifamily Dwellings shall, within thirty (30) days after the date he or she commences an agency or employment relationship with the Settling Defendant, be given a copy of this Consent Decree. The Settling Defendant shall obtain from each such agent or employee a signed statement acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

72.   Within sixty (60) days of the entry of this Consent Decree, each Settling Defendant shall provide to their agents and employees directly involved in leasing units at, and/or providing service to residents of, River Place, Silver Towers, or the Additional Property, a copy of this Consent Decree. The Settling Defendant shall obtain from each such agent or employee a signed statement acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

73.   During the term of this Consent Decree any new employee, agent, or supervisor of any Settling Defendant who will be involved in the renting of units at, and/or providing service to residents of, River Place, Silver Towers, or the Additional Property shall, within thirty (30) days after the date he or she commences an agency or employment relationship with the Settling Defendant, be given a copy of this Consent Decree. The Settling Defendant shall obtain from

30

each such agent or employee a signed statement acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

74.    In lieu of providing individuals or entities with copies of the Consent Decree as required by Section XIII of this Consent Decree, the Settling Defendants may instead provide a summary of the Consent Decree with the United States' advance written approval of the form and content of the proposed summary. Copies of the Consent Decree (or approved summary) may be provided electronically.

75.    The Settling Defendants shall ensure that they and their employees and agents who have supervisory authority over the design and/or construction of Covered Multifamily Dwellings have received, are familiar with, and have reviewed, the Fair Housing Accessibility Guidelines and the United States Department of Housing and Urban Development Fair Housing Act Design Manual. The Settling Defendants shall inform their employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of Covered Multifamily Dwellings at issue in this case, of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

76.    Within one hundred and twenty (120) days of the date of entry of this Consent Decree, the Settling Defendants and each of their employees and agents whose duties, in whole or in part, involve or will involve supervision over the development, design and/or construction of Covered Multifamily Dwellings of the type at issue in this case, shall undergo training on the design and construction requirements of the FHA. The educational program provided to employees not engaged in design, construction, or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements. The training(s) shall

31

be conducted by a qualified third-party individual or firm, not associated with the Settling

Defendants or their counsel, and approved by the United States; and any expenses associated

with this training shall be paid for by the Settling Defendants. Thirty (30) days before the

training, the Settling Defendants shall provide the United States the name(s), address(es) and

telephone number(s) of the trainer(s); and copies of the training outlines and any materials to be

distributed by the trainers. Thirty (30) days after the training, the Settling Defendants shall

provide to the United States certifications executed by each of them and by covered employees

and agents confirming their attendance, in a form substantially equivalent to Appendix I. The

United States may waive the training requirements in the foregoing paragraph for such

employees or agents who received training from a qualified trainer on the design and

construction requirements or the accessibility requirements of the FHA in the six (6) months

prior to the entry of this Consent Decree upon the Settling Defendants' provision of executed

certifications from each such employee or agent.

### XIV. NOTICE OF SETTLING DEFENDANTS' NON-DISCRIMINATION POLICY

77.    Within thirty (30) days of the date of entry of this Consent Decree, the Settling

Defendants shall post and prominently display in the sales or rental offices of River Place, Silver

Towers, and the Additional Property a sign no smaller than ten (10) by fourteen (14) inches

indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that

comports with 24 C.F.R. Part 110 will satisfy this requirement.

78.    For the duration of this Consent Decree, in all future advertising in newspapers and

electronic media, and on pamphlets, brochures and other promotional literature regarding River

Place, Silver Towers, or the Additional Property, or any new Covered Multifamily Dwelling that

any Settling Defendant may design or construct, such Settling Defendant shall place, in a

conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal FHA.

79.    No later than one hundred eighty (180) days after the date of entry of this Consent Decree, the Settling Defendants shall submit to the United States an initial report regarding the signed statements of those employees and agents who have completed the training program specified in Paragraphs 75 and 76 of this Consent Decree. Thereafter, during the term of this Consent Decree, the Settling Defendants shall, on the anniversary of the entry of this Consent Decree, submit to the United States a report containing the signed statements of new employees and agents that, in accordance with Paragraphs 70 and 72 of this Consent Decree, they have received and have had the opportunity to read the Consent Decree, and had an opportunity to have questions about the Consent Decree answered, except that the last report shall be due on or before sixty (60) days prior to the anniversary.

80.    For the duration of this Consent Decree, the Settling Defendants shall advise the United States in writing within thirty (30) days of receipt of any written administrative or judicial fair housing complaint regarding any Covered Multifamily Dwelling designed or constructed by them, or against any employee or agent of either of them working at or for any such property, alleging unlawful discrimination on the basis of disability in housing. Upon reasonable notice, each Settling Defendant shall also provide the United States all non-privileged information it may request concerning any such complaint. The Settling Defendants shall also advise counsel for the United States, in writing, within thirty (30) days of the resolution of any such complaint.

81.    For the term of this Consent Decree, the Settling Defendants are required to preserve all records related to this Consent Decree for River Place, Silver Towers, or the Additional Property and any other Covered Multifamily Dwellings designed or constructed by them during the duration of this Consent Decree. Upon reasonable notice to any Settling

Defendant, representatives of the United States shall be permitted to inspect and copy any non-privileged records of the Settling Defendants, or inspect any developments or residential units under the control of either of them bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Settling Defendants and tenants from such inspections.

## XV. LOW-INCOME HOUSING TAX CREDIT PROGRAM COMPLIANCE

82.     The Settling Defendants are hereby notified that, in the event that they fail to comply with any of the terms of this Consent Decree and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation. See 26 U.S.C. § 42(m)(1)(B)(iii).

## XVI. DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

83.     This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court. By consenting to entry of this Consent Decree, the parties agree that in the event that the Settling Defendants engage in any future conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" by that Settling Defendant pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

84.     The Complaint in this action is hereby dismissed as to the Settling Defendants, without prejudice to its reinstatement in accordance with the next paragraph. The Complaint is not dismissed as to the Architect Defendant.

85.     The United States shall be entitled to reinstate the Complaint in this action as to any Settling Defendant at any time during the duration of this Consent Decree if the Court determines that such Settling Defendant has failed to perform, in a timely manner, any act

34

required by this Consent Decree or has otherwise failed to act in accordance with any provision of this Consent Decree.

86.   The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree. The United States may move the Court to extend the duration of the Consent Decree in the interests of justice. Each Settling Defendant reserves the right to object to any such extension and to oppose any such motion. The duration of the Consent Decree with respect to any Settling Defendant also may be extended by the mutual written agreement of the United States and the relevant Settling Defendant.

87.   The United States and the Settling Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by a Settling Defendant to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

88.   Upon the expiration of the Consent Decree and all obligations thereunder, the Complaint in this action shall be dismissed with prejudice as to the Settling Defendants.

## XVII. TIME FOR PERFORMANCE

89.   Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the Settling Defendants.

## XVIII. MISCELLANEOUS

90.   Each party to this litigation will bear its own costs and attorneys' fees associated

with this litigation.

91.   The United States and the Settling Defendants understand and agree that this Consent Decree and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

The undersigned apply for and consent to the entry of this Consent Decree:

_For the United States_:

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

PREET BHARARA
United States Attorney

By: _____

LI YU
JESSICA JEAN HU
JACOB LILLYWHITE
NATASHA W. TELEANU
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel. Nos. (212) 637-2734/2726/2639/2528
Fax. Nos. (212) 637-2686
Li.Yu@usdoj.gov
Jessica.Hu@usdoj.gov
Jacob.Lillywhite@usdoj.gov
Natasha.Teleanu@usdoj.gov

_For the Settling Defendants_:

SKADDEN ARPS, SLATE,
MEAGHER & FLOM LLP

By: _____

LAWRENCE S. SPIEGEL
PATRICK M. WILSON
New York, New York 10036
Tel. No. (212) 735-4155
Fax. No. (917) 777-4155
Lawrence.spiegel@skadden.com

SO ORDERED:

_____
HON.                                                   1/12/2017
UNITED STATES DISTRICT JUDGE

**APPENDIX A-1**

**PUBLIC AND COMMON USE AREAS AT RIVER PLACE**

As soon as reasonably possible, but no later than 12 months from the entry of this Consent Decree, Defendants shall finish the retrofits identified in this Appendix A-1.

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2**

**LEASING OFFICE – 14TH FLOOR (ADAAG)**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - opening force | Opening force 14 lbs. | Will decrease opening force to 5 lbs. max. |
| Entrance door - closing speed | Closing speed approximately 2 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Conference room door - width | 31" clear width | Will adjust to 32" min. clear width |
| Conference room door - hardware | Door has knob hardware | Will replace knob hardware with lever hardware. |
| Toilet room - entrance door, threshold | 7/8" high on the hallway side | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Toilet room - entrance door, hardware | Door has knob hardware | Will replace knob hardware with lever hardware. |
| Toilet room - clearances and fixtures | The toilet room is inaccessible, lacking compliant clearance within the room, accessible toilet, accessible lavatory and accessible mirror | Will provide an accessible toilet room. |

**OBSERVATION DECK – 32ND FLOOR**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Route to the deck - ramp | Running slope 21.8% to 22.4% | Will adjust running slope to 8.33% max. |

| | | |
|---|---|---|
| Route to the deck - ramp | Handrail on one side only | Will install handrails on both sides of ramp. |
| Route to the deck - ramp | Landing - no level landing at the top of the ramp | Will provide level landing at the top of the ramp. |
| Entrance door – maneuvering clearance | 0" latch-side clearance on the pull side, due to the gap in the ground surface at the door | Will adjust to 18" wide min. for a forward approach to the pull side of a door. Alternatively, will provide a power-assisted door assembly. |
| Entrance door – maneuvering clearance | 0" latch-side clearance on the push side | Will adjust to 12" wide min. for a forward approach to the push side. Alternatively, will provide a power-assisted door assembly. |

**HALLWAYS AT DWELLING UNITS – ALL FLOORS**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Lighting sconces in the elevator lobby | Protrude 5¾" at 72" AFF | Will adjust to protrude 4" max.; will lower to 27" max. AFF; or will provide permanent cane detectable barrier below. |

**LAUNDRY ROOMS**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - threshold | 1" to 1 1/8" high on trash room side, bevel 1:1 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door - threshold | 1" to 1 1/8" high on the hallway side, bevel 1:1 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

## LAUNDRY ROOMS ON FLOORS 33 AND 37

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Turning space | No compliant turning space - interior clearance 52¼" deep typical | Will provide reasonable assistance of building staff when requested by a resident with disabilities needing to use one of the many accessible laundry rooms on other floors. |

## MAILBOXES

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Mailboxes | Top 2 rows at 64½" and 59" AFF | Will provide alternative mail service by building staff at the request of a resident. |

## TRASH CHUTE ROOMS

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door threshold – trash room side | 1" high on trash room side, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Door threshold – hallway side | ¾" to 1" high on the hallway side, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Chute access door - hardware | Hardware requires twisting to open chute door | Will install hardware that does not require twisting to open chute door. Alternatively, will provide alternative trash pickup by the building staff at set times on a daily basis for any resident with a disability, in which case residents will be notified of this procedure in writing, and notices of this procedure will be posted on building bulletin boards. |

**ACTIVITY CENTER, 3RD FLOOR**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Main entrance door | Opening force 11 lbs. | Will decrease opening force of door to 5 lbs. max. |
| Concierge desk | 42" above finished floor ("AFF") | Will lower a portion of the desk 30" min. in width at 28" min. to 34" max. AFF. |

**ACTIVITY CENTER, 3RD FLOOR – CHILDREN'S PLAYROOM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force 11 lbs. | Will decrease opening force of door to 5 lbs. max. |
| Television | Protrudes 6" at 46" AFF | Will adjust to protrude 4" max.; will raise to 80" min. AFF; or will provide cane detectable barrier below. |

**ACTIVITY CENTER, 3RD FLOOR – WEIGHT ROOM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Paper towel dispenser | 57" AFF | Will lower dispenser to 54" max. AFF for side reach or 48" max. AFF for forward reach. |
| Door to the pool area - opening force | Opening force 16 lbs. | Will decrease opening force of door to 5 lbs. max. |

**ACTIVITY CENTER, 3RD FLOOR – POOL AREA**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Women's shower compartment - dispensers | 63" AFF | Will lower dispensers to 54" max. AFF for side reach or 48" max. AFF for forward reach. |

4

## ACTIVITY CENTER, 3RD FLOOR – WOMEN'S LOCKER ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Lavatory - height | 37" AFF | Will lower lavatory to 34" max. AFF. |
| Lavatory - pipe insulation | No insulation | Will install pipe insulation. |
| Toilet compartment - flush control | Mounted on narrow side of the clearance | Will mount flush control on wide side of the toilet clearance. |
| Toilet compartment - coat hook | 67½" AFF | Will lower coat hook to 54" max. AFF for side reach; 48" max. AFF for forward reach. |
| Lockers - upper | Coat hooks 72" AFF | Will lower coat hooks to 9" min. AFF for side reach. |
| Lockers - upper | Lock/latch 57" AFF | Will lower lock/latch to 54" max. AFF for side reach or 48" max. AFF for forward reach. |
| Lockers - lower | Bottom shelf 4" AFF | Will raise shelf to 9" min. AFF for side reach. |
| Steam room door - opening force | Opening force 12 lbs. | Will decrease opening force of door to 5 lbs. max. |
| Sauna - entrance door width | 22" clear width | Will adjust to 32" min. clear width. |
| Sauna - entrance door threshold | 4" high | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Shower compartments | No accessible shower compartment | Will provide min. of one accessible shower compartment. |
| Door to pool area - opening force | Opening force 12 lbs. | Will decrease opening force to 5 lbs. max. |
| Door to pool area – maneuvering clearance | 46¼" wide | Will adjust to 54" wide min. for a latch-side approach on the pull side of a door that has a closer or 48" wide min. for a door without a closer. Alternatively, will provide a power-assisted door assembly. |

5

## ACTIVITY CENTER, 3RD FLOOR – MEN'S LOCKER ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Lavatory - height | 37½" AFF | Will raise/lower to 34" max. AFF. |
| Lavatory - pipe insulation | No insulation | Will install pipe insulation. |
| Mirror | 48½" AFF | Will lower mirror to 40" max. AFF. |
| Toilet compartment - flush control | Mounted on narrow side of the clearance | Will mount flush control on wide side of the toilet clearance. |
| Toilet compartment - coat hook | 67" AFF | Will lower coat hook to 54" max. AFF for side reach or 48" max. AFF for forward reach. |
| Urinal - alcove width | 32" wide | Will increase alcove to 36" wide min. |
| Lockers - upper | Coat hooks 72" AFF | Will lower coat hook to 9" min. AFF for side reach. |
| Lockers - upper | Lock/latch 57" AFF | Will lower lock/latch to 54" max. AFF for side reach; 48" max. AFF for forward reach. |
| Lockers - lower | Bottom shelf 4" AFF | Will raise shelf to 9" min. AFF for side reach. |
| Steam room door - opening force | Opening force 12 lbs. | Will decrease opening force to 5 lbs. max. |
| Steam room door - closing speed | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Sauna - entrance door width | 22" clear width | Will adjust to 32" min. clear width. |
| Sauna - entrance door threshold | 4" high | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Shower compartments | No accessible shower compartment | Will provide a min. of one accessible shower compartment. |
| Door to pool area - opening force | Opening force 14 lbs. | Will decrease opening force to 5 lbs. max. |
| Door to pool area - maneuvering clearance | 10¾" latch-side clearance on the pull side | Will adjust to 18" wide min. for a forward approach to the pull side of a door. |

## ACTIVITY CENTER, 3RD FLOOR – HALLWAY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Hallway doors near locker rooms - width | 27¾" clear width on the operating leaf | Will adjust to 32" min. clear width at the hallway doors. |
| Door to the patio area at the tennis courts - width | 30½" clear width | Will adjust to 32" min. clear opening width |
| Door to the patio area at the tennis courts - threshold | 2 7/8" high on the interior side | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Door to the patio area at the tennis courts - threshold | 4 7/8" on the exterior side | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

## ACTIVITY CENTER, 3RD FLOOR – BASKETBALL COURT

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - opening force | Opening force 12 lbs. | Will decrease opening force of door to 5 lbs. max. |
| Entrance door - closing speed | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |

## ACTIVITY CENTER, 3RD FLOOR – UNISEX TOILET ROOMS NEAR THE COMMUNITY ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door, right room - threshold | ½" high on the toilet room side; 1:1.5 bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

Alternatively, will provide a power-assisted door assembly.

7

| Entrance door, right room - threshold | 3/8" on the vestibule side, 1:1.5 bevel | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. |
|---|---|---|
| Lavatory, right room - pipe insulation | No insulation | Will install pipe insulation. |
| Toilet, right room - flush control | Mounted on narrow side of the clearance | Will mount flush control on wide side of the toilet clearance. |
| Entrance door, left room - threshold | 1/2" high on the toilet room side; 1:1.5 bevel | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door, left room - threshold | 3/8" on the vestibule side, 1:1.5 bevel | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. |
| Lavatory, left room - pipe insulation | No insulation | Will install pipe insulation. |

## ACTIVITY CENTER, 3RD FLOOR – COMMUNITY ROOM (RIVER ROOM)

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - opening force | Opening force 13 lbs. | Will decrease opening force to 5 lbs. max. |
| Kitchen - sink | Countertop 36" AFF | Will lower countertop to 34" max. AFF. |
| Kitchen - sink | No knee clearance for forward approach | Will provide for forward approach with compliant knee and toe clearance and pipe insulation. |
| Microwave oven - height | 64" AFF, measured to the highest operating control | Will lower microwave to 54" max. AFF for side reach; 48" max. AFF for forward reach. |

8

**ACTIVITY CENTER, 3RD FLOOR – TENNIS COURTS**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance gate - latch height | 53" AFF | Will adjust latch to 48" max. AFF for forward reach; 54" max. AFF for side reach. |
| Entrance gate - threshold | Abrupt level change approximately 3" high | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance gate - threshold | Gap 4¼" wide | Will adjust gap to ½" max. in the direction of travel. |

9

# APPENDIX A-2

## PUBLIC AND COMMON USE AREAS AT SILVER TOWERS

As soon as reasonably possible, but no later than 12 months from the entry of this Consent Decree, Defendants shall finish the retrofits identified in this Appendix A-2.

## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2

### MARKET RATE UNITS
### NORTH TOWER BUILDING ENTRANCE AND LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance Doors, exterior, opening force | Opening force 11 lbs. (left), 15 lbs (right) | Will decrease opening force to 8.5 lbs. max. |
| Entrance Doors, vestibule, opening force | Opening force 11 lbs. (left), 13 lbs (right) | Will decrease opening force to 5 lbs. max. |
| Reception Desk | 50 5/8" AAF | Will lower a portion of the concierge desk 30" min. in width at 28" min. to 34" max. AFF; alternatively, will provide an accessible work surface adjacent to the concierge desk. |

### NORTH TOWER BICYCLE STORAGE ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door from mail room to hallway leading to the storage room - clearance | 2" latch-side clearance on the push side of the door | Will increase latch-side clearance to 12" on push side of door.  Alternatively, will provide a power-assisted door assembly. |
| Entrance door - opening force | Opening force 9 lbs. | Will decrease opening force to 5 lbs. max. |
| Entrance door - closing speed | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Entrance door threshold | 3/4" high on the room side | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Overhead duct | Protrudes 37 1/2" at 64" AFF | Will adjust to protrude 4" max.; or extend to within 27" of the floor; or provide |

| | permanent cane detectable barrier below. |
|---|---|
| 41st Street entrance door - opening force | Opening force 22 lbs. (left), 15 lbs. (right) | Will decrease opening force to 8.5 lbs. max. |

## NORTH TOWER LAUNDRY ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door - clearance | 7 1/2" latch-side clearance on the push side of the door | Will adjust to 12" min. Alternatively, will provide a power-assisted door assembly. |
| Door threshold | 3/4" high on the hallway side | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Sink | No knee clearance for forward approach | Will adjust to forward approach with compliant knee and toe clearance and pipe insulation. |
| Card vending station | Protrudes 8 1/4" at 52" AFF | Will adjust to protrude 4" max.; or Mount at 27" max. AFF or provide permanent cane detectable barrier below. |
| Card vending station | Highest operating part 60" AFF | Will decrease to 54" max. AFF for side reach; 48" max. AFF for forward reach. |

## SOUTH TOWER BUILDING ENTRANCE AND LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance doors, exterior – opening force | Opening force 12 lbs. (left), 13 lbs. (right) | Will decrease opening force to 8.5 lbs. max. |
| Entrance doors, vestibule – opening force | Opening force 12 lbs. (left), 12 lbs. (right) | Will decrease opening force to 5 lbs. max. |
| Reception desk | 50 1/2" AFF | Will make a portion of the desk 30" min. in width at 28" min. to 34" max. AFF. |
| Elevator lobby door - opening force | Opening force 11 lbs. (right) | Will decrease opening force to 5 lbs. max. |
| Rental gallery vestibule door – opening force | Opening force 10 lbs. (right) | Will decrease opening force to 5 lbs. max. |

## SOUTH TOWER BICYCLE STORAGE ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door from mail room to hallway leading to the storage room - clearance | 1" latch-side clearance on the push side of the door | Will adjust to make a 12" min. for a door that latches and is self-closing. Alternatively, will provide a power-assisted door assembly. |
| Door from mail room to hallway leading to the storage room - threshold | 3/4" high on both sides, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door - threshold | 1" high on the room side, bevel 1:1 7/8" high on the hallway side, bevel 1:1 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door - closing speed | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| 41st Street entrance door - opening force | Opening force 19 lbs. (left), 19 lbs. (right) | Will decrease opening force to 8.5 lbs. max. |
| 41st Street entrance door - threshold | Abrupt level change in the floor at the threshold, due to tile damage | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

## SOUTH TOWER LAUNDRY ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door - clearance | 0" latch-side clearance on the push side of the door | Will adjust to make 12" min. on push side. Alternatively, will provide a power-assisted door assembly. |
| Door - clearance | 2" latch-side clearance on the pull side of the door | Will adjust to make an 18" min. on pull side.  Alternatively, will provide a power-assisted door assembly. |
| Door threshold | 5/8" high on the room side, bevel 1:1 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

| | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Sink | No knee clearance for forward approach | Will adjust to make forward approach with compliant knee and toe clearance and pipe insulation. |
| Sink - height | 34 3/8" AFF | Will adjust to make 34" max. AFF. |
| Card vending station | Protrudes 8 1/4" at 52" AFF | Will make protrude 4" max.; or Mount at 27" max. AFF; or Provide permanent cane detectable barrier below. |
| Card vending station | Highest operating part 60 1/2" AFF | Will decrease to 54" max. AFF for side reach; 48" max. AFF for forward reach. |

### SOUTH TOWER PARKING GARAGE VALET STATION

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door from the hallway to the garage | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Exterior door to the elevator vestibule | Opening force 14 lbs. | Will decrease opening force to 8.5 lbs. max. |

### SOUTH TOWER, 8TH FLOOR TERRACE

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door from elevator lobby - closing speed | Closing speed approximately 2 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Door from elevator lobby - threshold | 3/4" high on the lobby side, plus 3/8" abrupt level change, bevel 1:1 5/8" high on the terrace side, plus 5/8" high with a 1:1.5 bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Rinsing shower | Shower control 59 1/4" AFF | Will make 54" max. AFF for side reach; 48" max. AFF for forward reach. |

### SOUTH TOWER WOMEN'S CHANGING ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - threshold | 1 1/8" high on the hallway side, bevel 1:1 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

| Entrance door - opening force | Opening force 10 lbs. | Will decrease opening force to 5 lbs. max. |
| Door to pool area - opening force | Opening force 11 lbs. | Will decrease opening force to 5 lbs. max. |
| Hair dryer | 57" AFF | Will make 54" max. AFF for side reach; 48" max. AFF for forward reach. |
| Toilet compartment - side grab bar | Extends 50" from rear wall | Will increase to 52" min. from the rear wall. |
| Toilet compartment - seat cover dispenser | 54" AFF, behind the toilet | Will make unobstructed clear floor space at the dispenser; 54" max. AFF for side reach, 48" max. AFF for forward reach. |
| Toilet compartment - door hardware | No pull hook to close the door | Will install pull hook, or other hardware to enable closing the door. |
| Shower compartment - size | 36" wide x 38" deep | Will adjust to 36" x 36". |
| Shower compartment - shower spray unit | 82" AFF | Will decrease to 48" max. AFF for forward reach. |
| Sauna - entrance door closing speed | Closing speed approximately 2 seconds | Will adjust to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Sauna - rinsing shower control | 63" AFF | Will adjust to 54" max. AFF for side reach; 48" max. AFF for forward reach. |

## SOUTH TOWER MEN'S CHANGING ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Entrance door - threshold | 1 1/8" high on the hallway side, bevel 1:1 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door - opening force | Opening force 11 lbs. | Will decrease opening force to 5 lbs. max. |
| Toilet compartment - door hardware | No pull hook to close the door | Will install pull hook, or other hardware to enable closing the door. |
| Toilet compartment - toilet centerline | 19" from the side wall | Will install new offset trap to provide for centerline between 16" and 18" from side wall. |
| Toilet compartment - side grab bar | Extends 50" from rear wall | Will increase to 52" min. from the rear wall. |
| Toilet compartment - seat cover dispenser | 55" AFF, behind the toilet | Will adjust to make unobstructed clear floor space at the dispenser; 54" max. AFF |

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
|  |  | for side reach; 48" max. AFF for forward reach. |
| Toilet compartment - coat hook | 54 1/2" AFF | Will make 54" max. AFF for side reach; 48" max. AFF for forward reach. |
| Hair dryer | 58" AFF | Will make 54" max. AFF for side reach; 48" max. AFF for forward reach. |
| Shower compartment - shower spray unit | 82" AFF | Will decrease to 48" max. AFF for forward reach. |
| Sauna - entrance door opening force | Opening force 11 lbs. | Will decrease opening force to 5 lbs. max. |
| Sauna - entrance door closing speed | Closing speed approximately 2 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Door to pool area - opening force | Opening force 13 lbs. | Will decrease opening force to 5 lbs. max. |
| Door to pool area - closing speed | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |

## SOUTH TOWER STUDIO ROOM G

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - opening force | Opening force 7 lbs. | Will decrease opening force to 5 lbs. max. |

## SOUTH TOWER STUDIO B WORKOUT ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - opening force | Opening force 7 lbs. | Will decrease opening force to 5 lbs. max. |
| Sink | No knee clearance for forward approach | Will adjust to make forward approach with compliant knee and toe clearance and pipe insulation. |

## SOUTH TOWER MASSAGE ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door - threshold | 1 1/8" high on the hallway side, bevel 1:1 | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. |

## SOUTH TOWER POOL

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door near the elevators - opening force | Opening force 11 lbs. | Will decrease opening force to 5 lbs. max. |
| Entrance door near the showers - opening force | Opening force 14 lbs. | Will decrease opening force to 5 lbs. max. |
| Sauna entrance door - opening force | Opening force 12 lbs. | Will decrease opening force to 5 lbs. max. |
| Rinsing shower heads | 85" AFF | Will adjust to make a minimum one shower with shower spray unit on a 60" hose; 54" max. AFF for side reach; 48" max. AFF for forward reach. |

## SOUTH TOWER LOUNGE AREA

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Sink | No knee clearance for forward approach | Will adjust to make forward approach with compliant knee and toe clearance and pipe insulation. |

## SOUTH TOWER CLUB 7 FITNESS CENTER

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door from the lounge - opening force | Opening force 11 lbs. | Will decrease opening force to 5 lbs. max. |
| Entrance door from the lobby - opening force | Opening force 8 lbs. | Will decrease opening force to 5 lbs. max. |
| Entrance door to the yoga room | Maneuvering clearance is obstructed by a fitness machine | Will adjust to make unobstructed clear floor space at the door. |

## CORPORATE UNITS
## BUILDING ENTRANCE AND LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance doors, exterior – opening force | Opening force 20 lbs. (both doors) | Will decrease opening force to 8.5 lbs. max. |
| Entrance doors, vestibule – opening force | Opening force 14 lbs. (right), 11 lbs. (left) | Will decrease opening force to 5 lbs. max. |

7

| Reception desks | Main desk: 49 1/2" AFF<br>Side desk: 41 3/8" AFF | Will adjust to make a portion of the desk 30" min. in width at 28" min. to 34" max. AFF; alternatively, will provide an accessible work surface adjacent to the concierge desk. |

## CONFERENCE ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Entrance door threshold | 3/4" high on both sides, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door - opening force | Opening force 12 lbs. | Will decrease opening force to 5 lbs. max. |
| Electrical outlets | 13 3/4" AFF | Will adjust to make 15" min. AFF. |

## VENDING ROOM – TYPICAL BASED ON 4TH AND 6TH FLOORS

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Entrance door threshold | 3/4" high on both sides, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Turning space | No compliant turning space - interior clearance 55" | Will adjust to make 60" diameter min. turning circle; or a compliant T-shaped turning space. |

## BUSINESS CENTER 4TH FLOOR

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Entrance door threshold | 3/4" high on both sides, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Entrance door - opening force | Opening force 12 lbs. | Will decrease opening force to 5 lbs. max. |

## LAUNDRY ROOMS

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door - clearance | 2" latch-side clearance on the pull side of the door | Will adjust to make 18" min. |
| Door threshold | 3/4" high on both sides, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |
| Sink | No knee clearance for forward approach | Will adjust to make Forward approach with compliant knee and toe clearance and pipe insulation. |
| Entrance door, 4th floor - closing speed | Closing speed approximately 2 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |

## TRASH CHUTE ROOMS

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door - clearance | 4 3/4" latch-side clearance on the push side of the door | Will adjust to make 12" min. on push side for a door that latches and is self-closing. Alternatively, provide a power-assisted door assembly. |
| Door threshold | 1 1/4" high on trash room side, bevel 1:1.5 3/4" high on the hallway side, bevel 1:1.5 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. |

## INCLUSIONARY UNITS
## BUILDING ENTRANCE AND LOBBY

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance doors, exterior – opening force | Opening force 20 lbs. (left) | Will decrease opening force to 8.5 lbs. max. |
| Entrance doors, vestibule – opening force | Opening force 11 lbs. (right), 23 lbs. (left) | Will decrease opening force to 5 lbs. max. |

9

| Reception desk | 42 1/8" AFF | Will adjust to make a portion of the desk 30" min. in width at 28" min. to 34" max. AFF. |

## TRASH CHUTE ROOMS

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Door - closing speed | Closing speed approximately 2 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Door - clearance | 16 1/2" latch-side clearance on the pull side of the door | Will adjust to make 18" min. on pull side of door. Alternatively, provide a power-assisted door assembly. |
| Door threshold | 1" high on trash room side<br>7/8" high on the hallway side | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. |
| Clearance inside the room | No 30" x 48" min. clearance inside the room beyond the door swing | Will adjust to make min. 30" x 48" min. clearance inside the room beyond the door swing. Alternatively, will provide trash pickup service upon request of resident. |
| Turning space | No compliant turning space; interior clearance:<br>10th, 11th Floors - 56 1/2" x 59" 5th, 6th Floors - 61 1/2" x 43 3/4"<br>No 30" x 48" min. clearance inside the room beyond the door swing | Will adjust to make 60" diameter min. turning circle; or a compliant T-shaped turning space. Alternatively, will provide trash pickup service upon request of resident. |

## LAUNDRY ROOM – CELLAR

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| Door from elevator leading to the laundry room - clearance | 12 3/4" latch-side clearance on the pull side of the door | Will adjust to make 18" min. on pull side of door. Alternatively, provide power-assisted door assembly. |
| Entrance door threshold | 3/4" high on the room side, bevel 1:1.5<br>5/8" high on the hallway side, bevel 1:1.5 | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 |

| | | max. |
|---|---|---|
| Entrance door - opening force | Opening force 13 lbs. | Will decrease opening force to 5 lbs. max. |
| Entrance door - closing speed | Closing speed approximately 2 seconds | Will adjust closing speed to 3 sec. min. from 90 degrees open to 12 degrees open. |
| Sink | No knee clearance for forward approach | Will adjust to make forward approach with compliant knee and toe clearance and pipe insulation. |

## SOUTH TOWER LEASING OFFICE

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Entrance door | Opening force 12 lbs. | Will decrease opening force to 5 lbs. max. |
| Reception desk | 41 1/2" AFF | Will adjust to make a portion of the desk 30" min. in width at 28" min. to 34" max. AFF. |
| Unisex toilet room - door threshold | 1" high on the room side, bevel 1:1 3/4" high on the hallway side, bevel 1:1 | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. |
| Unisex toilet room - sink | No knee clearance for forward approach | Will adjust to make forward approach with compliant knee and toe clearance and pipe insulation. |
| Unisex toilet room - toilet flush control | Mounted on narrow side of the clearance | Will mount on wide side of the toilet clearance. |
| Unisex toilet room - mirror | 48 1/2" AFF | Will adjust to make 40" max. AFF measured to reflecting surface. |

11

# APPENDIX B-1

## UNIT RETROFITS AT RIVER PLACE

Defendants shall finish the retrofits listed in this Appendix B within the term of the Consent Decree.

### CLEAR OPENING WIDTH OF DOORS

#### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Bedroom door is 2' 9½" wide; Clear opening width of bedroom door is 31" | Will increase clear width to 31⅝" min, with the use of swing-clear offset door hinges or otherwise, upon the request of a resident or prospective resident. |
| All units | Closet door for closets greater than 24" deep is 2' 9½" wide; Clear opening width of closet door is 31" | Will increase clear width to 31⅝" min, with the use of swing-clear offset door hinges or otherwise, upon the request of a resident or prospective resident. |
| 507-4107 | Closet door near kitchen is a bi-fold door with 16½' clear width | Will reduce closet depth to 24" max. upon request of the resident or prospective resident. |

### UNIT ENTRANCE DOORS – THRESHOLD

#### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 201-4101, 402-3102, 2403-3103, 404-3104, 3204-4104, 205-4105, 506-4106, 507-4107, 412-4112, 218-3118, 1619-3119, 222-3122, 226-3126 | Threshold is ¾" to 1 3/8" high on the corridor side, with 1:1.5 bevel, and ½" to 1" high on the unit side, with 1:1.5 bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max. Alternatively, will provide threshold extensions with 8.33% max. running slopes. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes |

earliest.

## BATHROOM – MARBLE THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 201-4101, 402-3102, 2403-3103, 3204-4104, 205-4105, 506-4106, 507-4107, 412-4112, 218-3118, 1619-3119, 222-3122, 226-3126 | 3/8" to 9/16" high on bathroom side, with 1:1 bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 404-3104 | 7/16" high on the bathroom side of hall bathroom, with 1:1 bevel; 3/8" high on the bathroom side of master bathroom, with 1:1 bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## KITCHEN OUTLETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 201-3101 | Outlet right of the refrigerator is located behind the top panel of the range | Will move outlets, install new outlets, or provide wall-mounted power strips to provide unobstructed access to the wall-mounted outlet.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, |

| | | whichever comes earliest. |
| 226-3126, 3204-4104 | Less than 12" from the refrigerator measured to the centerline of outlet | Will move outlets, install new outlets, or provide wall-mounted power strips to provide outlets at least 12" from the refrigerator. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 222-3122 | Less than 12" from the end wall measured to the centerline of outlet, and outlet is greater than 46" AFF | Will move outlets, install new outlets, or provide wall-mounted power strips to provide outlets at least 12" from the end wall and maximum 46" AFF. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

**OBSTRUCTION OF GRAB BAR LOCATION – BATHROOM TOILET**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 6**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- |
| 201-4101, 402-3102, 2403-3103, 506-4106, 507-4107, 412-4112, 218-3118, 1619-3119, 222-3122 | Banjo countertop obstructs rear grab bar location | For 60 units, will remove banjo countertops in all bathrooms such that countertops do no obstruct the grab bar location. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. Of the 60 units, 20 must be two-bedroom units, 20 must be one-bedroom units, and 20 must be studio units. These 60 units will include the units where retrofits to the bathroom lavatory centerlines are completed by installing removable base cabinets. |

## KITCHEN RANGES

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 402-3102, 2403-3103 | Corner location centerlines less than 24" | Will reconfigure range and kitchen cabinets to relocate the range centerline 24" min. for centered side approach. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| All units except 402-3102 and 2403-3103 | Corner location centerlines less than 24" | Will reconfigure range and kitchen cabinets to relocate the range centerline 24" min. for centered side approach upon the request of a resident or prospective resident. |

For the remaining units, will remove or modify the banjo countertops and install grab bars upon the request of a resident or prospective resident.

4

KITCHEN CLEARANCE
FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 402-3102 | Less than 40" width at the refrigerator, range, and base cabinet | For 10 units, will install low-profile refrigerators, shallow-depth range, and base cabinets to provide 40" min. width. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For remaining units, will install low-profile refrigerators, shallow-depth range, and base cabinets to provide 40" min. width upon request of a resident or prospective resident. |
| 404-4104, 205-4105 | Less than 40" width at the refrigerator | Will install low-profile refrigerators to provide 40" min. width at the refrigerators. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 201-3101, 2403-3103, 506-4106, 507-4107, 412-4112, 1619-3119, 222-3122, 226-3126 | Less than 40" width at the refrigerator | Will install low-profile refrigerators to provide 40" min. width at the refrigerator at the request of a resident or prospective resident. |
| 3204-4104, 226-3126 | Width less than 40" at the range | Will install shallow-depth range to provide 40" min. width at the range at the request of a resident or prospective resident. |
| 412-4112 | Sink centerline less than 24" | For 15 units, will install removable base cabinet to provide 15" min. centerline for forward approach.<br><br>For remaining units, will install removable base cabinet to provide 15" min. centerline for forward approach, at the request of a |

5

## BATHROOM CLEAR FLOOR SPACE

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(i)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Clear Floor Space ("CLFS") beyond the door swing is less than 30" wide by 48" long | For 50 units, bathroom door swings will be reversed, or, where applicable, will ensure that installation of bathroom base cabinets that are removable by design provide sufficient clear floor space. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. For remaining units, at the request of a resident or prospective resident, will reverse bathroom door swings or install removable base cabinets to provide sufficient clear floor space. This retrofit shall be completed no later than ten (10) days after receiving the request. |
| 218-3118 | | Width less than 40" at the refrigerator and at the dishwasher | Will install low-profile appliances to provide 40" min. width at the refrigerator and/or at the dishwasher at the request of a resident or prospective resident. |

## BATHROOM TOILETS

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 402-3102, 218-3118, 3204-4104, 404-3104 (master bathroom), 3201-4101 (master bathroom), 412-4112 (master bathroom), 506-4106 (hall bathroom), | Less than 33" wide from the side wall to the lavatory base cabinet | In all units where retrofits to the bathroom lavatory centerlines are completed by installing removable base cabinets, will shift lavatory base cabinet to provide for 33" min. |

|  |  | shift lavatory base cabinet to provide for 33" min. |
|  |  | In remaining units, will shift lavatory base cabinet to provide for 33" min., upon request of resident or prospective resident. |
| 402-3102 | Centerline less than 18" from the side wall | Will install new offset trap to provide for centerline between 16" and 18" from side wall upon request of a resident or prospective resident. |

## BATHROOM LAVATORIES

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Lavatory centerline is less than 24" from the bathtub; removable base cabinet with noncompliant knee clearance | For a total of 130 units, will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall, and floor underneath, and covered pipes. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.  Of the 130 units, 35 must be two-bedroom units, 35 must be one-bedroom units, and 35 must be studio units. |
|  |  | For the remaining units, will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall, and floor underneath, and covered pipes upon request of a resident or a prospective resident. |

7

**APPENDIX B-2**

**UNIT RETROFITS AT SILVER TOWERS**

Defendants shall finish the retrofits listed in this Appendix B within the term of the Consent Decree, unless otherwise noted below.

**CLEAR OPENING WIDTH OF DOORS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC. (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units except 414 (bedroom door) | Clear opening width is typically 31 1/4" to 31 1/2"; 2'-9 1/2" for a door leaf | Will increase clear width to 31 5/8" min., with the use of a swing-clear offset hinge or otherwise, upon the request of a resident or prospective resident. |

**UNIT ENTRANCE DOORS – THRESHOLD**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | 3/4" to 7/8" high on corridor side, with 1:1.5 bevel; 1/2" to 3/4" high on unit side, with 1:1.5 bevel | Will make flush, or provide 1/4" high max. threshold, if not beveled, or provide 1/2" max. threshold, beveled at ratio of 1:2 max. Alternatively, will provide threshold extensions with 8.33% max. running slopes. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

**BATHROOM - MARBLE THRESHOLD**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | 1:1.5 bevel on bathroom side; 1:1 | Will adjust bevel to no steeper than 1:2. |

| | bevel on hall or bedroom side | Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## TERRACE THRESHOLD

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| S48A-S52A, S48D-52D, S53E-S58E | Level change at terrace door exceeds maximum of ¾". | Will install a lift or ramp, compliant with Fair Housing Act Guidelines, at the good faith request of a resident or a prospective resident. This retrofit shall be completed no later than forty-five (45) days after receiving the request. |
| S48A-S52A, S48D-52D, S53E-S58E | 1 15/16" high interior side, no bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max.  Retrofit will be made upon the good faith request of a resident or prospective resident, and shall be completed no longer than forty-five (45) days after receiving the request. |

## ELECTRICAL OUTLETS

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Electrical outlets in room locations other than kitchen less than 15" min. AFF | Will move outlets, install new outlets, or provide wall-mounted power strips such that outlets are located at least 15" above the finished floor.   Retrofit will be made upon the request of a resident or prospective resident, and shall be completed no longer than forty-five (45) |

2

days after receiving the request.

## KITCHEN OUTLETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| S4K-S6K, N9K-N49K, S8K-S49K, N11E-N49E, S8E-S49E, N50G-N54G, S50G-S54G, N55E-N60E, S55E-S60E, N55C-N60C, S55C-S60C, S3D-S6D, S3F-S6F, S3N-S6N, N9B-N49B, S8B-S49B, N33F-N49F, S33F-S49F, N38L-N49L, S38L-S49L, N50F-N54F, S50F-S54F, S3M-S6M, N35D-N49D, S36D-S49D, 2G-9G | Outlet is less than 36" from corner location | Will move outlets, install new outlets, or provide wall-mounted power strips to provide outlets at least 36" from the corner.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| N55A-N60A, S55A-S60A, 3B-9B, 2A-9A, 2C-9C, N9H-N31H, S9H-S31H | Less than 12" from the refrigerator measured to the centerline of outlets | Will move outlets, install new outlets, or provide wall-mounted power strips to provide outlets at least 12" from the refrigerator. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| N9H-N31H, S9H-S31H, N9L-N33L, N35L-N37L, S9L-S32L, 2A-9A, 10H-12H, 2C-9C, 3B-9B, 2C-9C | Less than 12" from the side wall to the centerline of outlets | Will move outlets, install new outlets, or provide wall-mounted power strips to provide outlets at least 12" from the side wall.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 2A-9A, 3B-9B, 2C-9C, 2E-9E, 10I-12I, 10K-12K, 10L-12L, 2G-9G | Outlets near the range and/or sink are greater than 46" AFF | Will move outlets, install new outlets, or provide wall-mounted power strips to provide at most 46" AFF upon the request of a resident or prospective resident. |

3

KITCHEN RANGES

FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| S4K-S6K, N9K-N49K, S8K-S49K, N11E-N49E, S8E-S49E, N50G-N54G, S50G-S54G, N55C-N60C, S55C-S60C, S3F-S6F, S3N-S6N, N9B-N49B, S8B-S49B, N35D-N49D, S36D-S49D, N33F-N49F, S33F-S49F, 401-701, 312-612 | Corner location centerlines less than 24" | For 75 units, will reconfigure range and kitchen cabinets to relocate the range centerline 24" min. for centered side approach.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. For remaining units, will reconfigure range and kitchen cabinets to relocate the range centerline 24" min. for centered side approach upon the request of a resident or prospective resident. |
| N50F-N54F, S50F-S54F, N55E-N60E, S55E-S60E, S3D-S6D, S3J-S6J, N9G-N30G, S9G-S32G, N9D-N34D, S9D-S35D | Corner location centerlines less than 24" | Will reconfigure range and kitchen cabinets to relocate the range centerline 24" min. for centered side approach upon the request of a resident or prospective resident. |

KITCHEN REFRIGERATORS

FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 10J-12J | Corner location centerlines less than 24" | Will reconfigure kitchen to relocate the refrigerator centerline 24" min. for centered side approach upon the request of a resident or prospective resident. |

## KITCHEN CLEARANCE

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| N12F-N32F, S9F-S32F, 2A-9A, 10J-12J, 2C-9C | Less than 40" width at the refrigerator | Will install low-profile refrigerators to provide 40" min. width at the refrigerator at the request of a resident or prospective resident. |
| N12F-N32F, S9F-S32F, 10H-12H | Sink centerline less than 24" | For 30 units, will install removable base cabinet to provide 15" min. centerline for forward approach. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For remaining units, will relocate sink to ensure that centerline is 24" min. from adjacent wall, or install removable base cabinet to provide 15" min. centerline for forward approach, upon the request of a resident or prospective resident. |
| N9K-N49K, S8K-S49K, N55E-N60E, S55E-S60E, S3M-S6M, N33F-N49F, S33F-S49F, N50C-N54C, S50C-S54C, N9H-N31H, S9H-S31H, 2G-9G, 10K-12K, 10L-12L | Sink centerline less than 24". | Will relocate sink to ensure that centerline is 24" min. from adjacent wall, or install removable base cabinet to provide 15" min. centerline for forward approach, at the request of a resident or prospective resident. |

## BATHROOM CLEAR FLOOR SPACE

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(i)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| S3A-S6A, N50G-N54G, S50G-S54G, N11E-N49E, S8E-S49E, N50C-N54C, S50C-S54C, N50F-N54F, S50F-S54F, N50A-N54A, S50A-S54A, N9H-N31H, S9H-S31H, N9G-N30G, | Clear Floor Space ("CLFS") beyond the door swing is less than 30" wide by 48" long | For 50 units, bathroom door swings will be reversed, or, where applicable, will ensure that installation of bathroom base cabinets that are removable by design provide |

5

| | sufficient clear floor space. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. For remaining units, at the request of a resident or prospective resident, will reverse bathroom door swings or install removable base cabinets to provide sufficient clear floor space. This retrofit shall be completed no later than ten (10) days after receiving the request. |
|---|---|
| S9G-S32G, N12F-N32F, S9F-S32F, N9D-N34D, S9D-S35D, N9L-N33L, N35L-N37L, S9L-S32L, 307-807, 305-805, 306-806, 317-517, 422-622, 825, 316-516, 304-804, 318-518, 324-824, 323-623, 823, 210-810, 312-612, 809, 2A-9A, 3B-9B, 10H-12H, 10J-12J, 10L-12L | |

## BATHROOM TOILETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| N55C-N60C, S55C-S60C, N9H-N31H, S9H-S31H, 101-12J, 10K-12K, 10L-12L, 3B-9B, 311-711 | Less than 33" wide from the side wall or bathtub to the lavatory base cabinet | In all units where retrofits to the bathroom lavatory centerlines are completed by installing removable base cabinets, will shift lavatory base cabinet to provide for 33" min.<br><br>In remaining units, will shift lavatory base cabinet to provide for 33" min., upon request of resident or prospective resident. |
| N50A-N54A (hall bathroom), S50A-S54A (hall bathroom), N55A-N60A (master bathroom), S55A-S60A (master bathroom), 314-514, 317-517, 304-804, 321-521, 315-515, 10H-12H | Centerline less than 18" from the side wall | Will install new offset trap to provide for centerline between 16" and 18" from side wall upon request of a resident or prospective resident. |

6

BATHROOM LAVATORIES

FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| S3A-S6A, S3E-S6E, S4K-S6K, N38L-N49L, S38L-S49L, N50G-N54G, S50G-S54G, N55E-N60E, S55E-S60E, N11E-N49E, S8E-S49E, N50C-N54C, S50C-S54C, N50A-N54A, S50A-S54A, N11E-N49E, S8E-S49E, N50C-N54C, S50C-S54C, N50F-N54F, S50F-S54F, N50A-N54A, S50A-S54A, N9H-N31H, S9H-S31H, N9G-N30G, S9G-S32G, N12F-N32F, S9F-S32F, N9D-N34D, S9D-S35D, N9L-N33L, N35L-N37L, S9L-S32L, 805 825, 316-516, 324-824, 323-623, 823, 210-810 311-711, 312-612, 809, 304-804, 315-515, 306-806, 422-622, 307-807, 2A-9A, 3B-9B, 10H-12H, 10J-12J, 10K-12K | Lavatory centerline is less than 24" from the bathtub, side wall, or shower curb, without removable base cabinets. | For a total of 80 units, will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall, and floor underneath, and covered pipes.<br><br>Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. Of the 80 units, 20 must be two-bedroom units, 20 must be one-bedroom units, and 20 must be studio units.<br><br>For the remaining units, will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall, and floor underneath, and covered pipes upon request of a resident or a prospective resident. |

**APPENDIX C**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS**
**OF RIVER PLACE AND SILVER TOWERS**

To Our Residents and Prospective Residents:

Federal law requires that the public and common use areas at River Place and Silver Towers contain accessibility features for persons with disabilities. Within the next twelve months, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of retrofits we will be undertaking is available at the leasing office. We do not anticipate that current residents will have to be relocated during the term of their tenancy or that prospective residents will have their move-in dates delayed because of the retrofits we will be undertaking.

Should you have questions regarding this letter, please contact the leasing office at River Place or Silver Towers, or the United States Attorney's Office, Southern District of New York, at (212) 637-0840.

Sincerely,
Silverstein Properties, Inc.

## APPENDIX D

## NOTICE TO RESIDENTS OR PROSPECTIVE RESIDENTS
## OF RETROFITS FOR RIVER PLACE AND SILVER TOWERS

River Place and Silver Towers are dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, to settle a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, the apartments at River Place and Silver Towers to provide greater accessibility for people with disabilities. The United States has alleged that certain features of your unit or prospective unit do not meet the accessible and adaptive design requirements of the Fair Housing Act. We want you to know that you may request to have your apartment, or prospective apartment, modified now at no cost to you.

Any scheduling of modifications will take into account your preferences and convenience. The actual work will take no more than five days and, should you have to move out temporarily, we will pay reasonable relocation and housing expenses at the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov click on "per diem rates" under travel) while the modifications are being made.

Depending on the particular features in your unit, the modifications may include:

- Modification of door entries and thresholds to ensure accessibility to persons in wheelchairs;

- Modification of bathrooms to ensure accessibility to persons in wheelchairs;

- Modification of kitchen appliances to ensure usability by persons with disabilities; or

- Lowering of electrical outlets.

While you do not have to request the modifications now, you should be aware that some of this work may be required at some point during the term of your lease, regardless of your intention to stay in the apartment for a longer time. A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications may be made.

If you have any questions, please contact us at the management office.

## APPENDIX E

## ADDITIONAL PROPERTY

| Name | Location |
|------|----------|
| 10 Freedom Place | 10 Freedom Place<br>New York, NY 10019 |

**APPENDIX F**

## NOTICE TO PERSONS WHO MAY HAVE SUFFERED FROM INADEQUATE ACCESSIBILITY AT RIVER PLACE AND OTHER RENTAL BUILDINGS

On _____ __ 2017, the United States District Court for the Southern District of New York entered a consent decree resolving a lawsuit brought by the United States Department of Justice against certain owners, builders, and/or developers alleging that they failed to include certain accessible features for persons with disabilities required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(c), in the design and construction of River Place and/or Silver Towers. River Place and Silver Towers agreed to the consent decree to settle the matter without litigation.

Under this consent decree, a person may be entitled to receive monetary relief if, in relation to any of the properties identified below, he or she:

- WAS DISCOURAGED FROM LIVING AT THAT PROPERTY BECAUSE OF THE LACK OF ACCESSIBLE FEATURES;

- HAS BEEN HURT IN ANY WAY BY THE LACK OF ACCESSIBLE FEATURES AT THAT PROPERTY;

- PAID TO HAVE AN APARTMENT AT THAT PROPERTY MADE MORE ACCESSIBLE TO PERSONS WITH DISABILITIES; OR

- WAS OTHERWISE DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY AS A RESULT OF THE DESIGN AND CONSTRUCTION OF THIS PROPERTY.

The properties relevant to this notice are:

- RIVER PLACE

- SILVER TOWERS

- 10 FREEDOM PLACE

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-2800. You may also fax us at 212-637-2702 or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street, 3rd Floor
New York, New York 10007

NOTE: You must call or write no later than _____, 20___.

## APPENDIX G

### RELEASE FORM

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States v. Silverstein Props., Inc. et al.*, 17 Civ. _____ (___) (S.D.N.Y.), I hereby release _____ _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the above-named defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
Signature

_____
Print name

_____
Date

STATE OF NEW YORK   )
                      s.s.:
COUNTY OF NEW YORK  )

On _____, 201__, before me personally came _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed above, and acknowledged to me he/she executed the same in his/her capacity, and that by his/her signature, he/she executed the foregoing release.

_____
Notary Public

**APPENDIX H**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE**

I _____, am an employee/agent of _____ and my duties include _____. I have received and read a copy or approved summary of the Consent Decree in *United States v. Silverstein Props., Inc. et al.*, 17 Civ. _____ (___) (S.D.N.Y.), and have had all of my questions concerning the Consent Decree answered to my satisfaction.

_____, 20____

_____

Employee Signature

**APPENDIX I**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities.

If my duties involve or will involve supervision over the development, design, and/or construction of an apartment building, I was also instructed as to the design and construction requirements of the Fair Housing Act.

If my duties involve or will involve supervisory authority over the rental of apartments and/or the provision of services to residents, I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act.

I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.


_____
Employee Signature


_____
Print Name


_____
Date