**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                Plaintiff,

-against-

SILVERSTEIN PROPERTIES, INC., RIVER PLACE I, LLC, RIVER PLACE II HOLDINGS, LLC, and COSTAS KONDYLIS AND PARTNERS, LLP,

                Defendants.

17 Civ. 00076 (VSB)

**STIPULATION OF SETTLEMENT**

# INTRODUCTION

        This Stipulation of Settlement (the "Stipulation") is entered into between Plaintiff the United States of America (the "United States"), by its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, and defendant Costas Kondylis and Partners, LLP (the "Architect Defendant" or "Costas Kondylis"), by its attorneys Milber Makris Plousadis & Seiden, LLP;

        WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619. Specifically, the United States' complaint in this Action, filed on January 5, 2017, alleges that the Architect Defendant, together with defendants Silverstein Properties, Inc., River Place I, LLC, and River Place II Holdings, LLC, have engaged in a pattern or practice of discrimination, and have denied rights to a group of persons in a manner raising an issue of general public importance, by failing to design and/or construct One River Place and Silver Towers with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

1

WHEREAS, Costas Kondylis, a New York domestic registered limited liability partnership in the state of New York, had its registration revoked as of April 27, 2011, and Costas Kondylis is currently an inactive entity;

WHEREAS, Costas Kondylis's attorneys, Milber Makris Plousadis & Seiden, LLP, are authorized to enter into this Stipulation on behalf of Costas Kondylis;

WHEREAS, the United States previously resolved the allegations in the Complaint against certain of the defendants by way of a consent decree with Silverstein Properties, Inc., River Place I, LLC, and River Place II Holdings I LLC, approved by the Court on January 12, 2017;

WHEREAS, One River Place and Silver Towers are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

**A.     The Architect Defendant**

WHEREAS, Costas Kondylis drew the architectural plans for One River Place and Silver Towers and, in that capacity, participated in the design of these apartment complexes;

**B.     Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are Covered Multifamily Dwellings and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently

2

wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(c) (these provisions and features are referred to herein as the "Accessible Design Requirements");

**C.     Conditions at One River Place and Silver Towers**

WHEREAS, One River Place is a high-rise residential apartment building located at 1 River Place in New York, New York. The complex consists of a tower with elevator access, and contains 920 covered multifamily dwelling units, as well as public and common-use areas, including a leasing office, landscaped public plaza, retail space, sundeck, swimming pool, fitness center, laundry room, children's playroom, and conference/business center;

WHEREAS, the United States inspected One River Place in August 2014 and specifically identified, among other things, the following conditions at One River Place that the United States alleges fail to meet the Accessible Design Requirements:

- Excessive closing speed and excessive force are required to operate the entrance door to the leasing office;
- There is an excessively high threshold at the entrance to the leasing office bathroom;
- There are excessively high thresholds at entrances to individual units and at entrances to bathrooms within individual units;
- Kitchen ranges, sinks, and refrigerators in individual units lack sufficient clearance for persons who use wheelchairs;
- There is insufficient clear opening width at entrances to individual units;

3

- There is insufficient clear opening width of bedrooms, bathrooms, and walk-in closet doors within individual units;
- There is insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;
- Rear grab bar location behind toilets in individual-unit bathrooms is obstructed by countertops;
- The ramp leading to the observation deck has an excessively steep running slope and lacks handrail;
- There are excessively high thresholds at entrances to laundry rooms;
- There are excessively high thresholds at entrances to trash chute rooms;
- Excessive opening force is required to operate the entrance door to the activity center;
- There are excessively high thresholds at entrances to the toilet rooms in the activity center;
- Excessive force is required to operate the entrance door to the children's playroom; and
- Mailboxes are mounted too high for persons who use wheelchairs.

WHEREAS, Silver Towers is a high-rise residential apartment building located at 600 West 42nd Street in New York, New York. The complex consists of two towers with elevator access and contains 1,355 covered multi-family dwelling units, as well as public and common-use areas including a lobby, bicycle storage rooms, laundry rooms, parking garage valet station, workout room, conference room, and business center;

WHEREAS, the United States inspected Silver Towers in July 2016 and specifically identified, among other things, the following conditions at Silver Towers that the United States

alleges fail to meet the Accessible Design Requirements:

- Excessive force is required to operate the entrance door to North and South Tower lobbies, and the reception desk is excessively high;
- Excessive closing speed and excessive force are required to operate the entrance door to North and South Tower bicycle storage rooms;
- North and South Tower laundry room sinks lack sufficient clearance and pipe insulation;
- Excessive closing speed and excessive force are required to operate the entrance door to laundry room cellar;
- There are excessively high thresholds at entrances to individual units and at entrances to bathrooms within individual units;
- There is insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;
- There are excessively high thresholds at entrances to trash chute rooms;
- Excessive force is required to operate entrance doors in South Tower men's and women's changing rooms;
- Maneuvering space inside the entrance door to South Tower yoga room is obstructed;
- There are excessively high thresholds and excessive force required to operate entrance door to conference room; and
- Excess force is required to operate the entrance door to South Tower leasing office.

D. **Agreement of the Parties to this Stipulation**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

5

WHEREAS, the parties agree to the entry of this Stipulation.

**It is hereby AGREED, by and between the parties:**

### I. ACKNOWLEDGEMENTS

1. As an inactive limited liability partnership, Costas Kondylis acknowledges that it is no longer providing architectural services, including the preparation of any architectural or site plans, drawings, or blueprints for covered multi-family housing, as defined in the FHA.

2. During the term of this Stipulation, if Costas Kondylis or any of its partners, agents, employees, or representatives acting on its behalf, seek to alter its status and become an active limited liability partnership, it will promptly notify the United States so that the United States can take any necessary action to ensure Costas Kondylis's compliance with the FHA.

3. With regard to its design of One River Place and Silver Towers, Costas Kondylis:

   a. Admits that Costas Kondylis provided certain design services to Silverstein Properties, Inc. for One River Place and Silver Towers. Specifically included as part of said services, Costas Kondylis prepared certain architectural drawings for the dwelling units and supplied certain specifications for the dwelling units that were used by the construction contractors to construct One River Place and Silver Towers.

   b. Admits that, as built and constructed, certain features of One River Place and Silver Towers did not satisfy the accessibility standards established under the Fair Housing Act Guidelines promulgated by the U.S. Department of Housing and Urban Development.

### II. PAYMENTS TO AGGRIEVED PERSONS

4. Within 30 days of execution of this Stipulation, the Architect Defendant shall deliver to the Clerk of Court TEN THOUSAND DOLLARS ($10,000) to be deposited into the registry of the Court, placed into an interest-bearing account, and managed by the Clerk of the

Court in accordance with Rule 67 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2041-42, and the terms of this Stipulation for the purpose of compensating any aggrieved persons who may have suffered injury as a result of the Architect Defendant's allegedly discriminatory housing practices regarding One River Place and Silver Towers. This money shall be referred to as the "Architect Settlement Fund."

5.   The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person. The United States will inform the Architect Defendant in writing of each of its determinations, together with a copy of a sworn statement or declaration from each aggrieved person setting forth the factual basis of his/her claim.

6.   If the Architect Defendant disputes the amount of a payment to an aggrieved person, the Architect Defendant shall, within fourteen (14) days of receiving notice of a determination (a "Determination") from the United States, provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim. The United States shall give due consideration to any objections it receives from the Architect Defendant and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to the Architect Defendant, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid. If the Architect Defendant disputes the Reconsidered Determination, the Architect Defendant may—within twenty (20) days after receiving the Reconsidered Determination—file an application with the Court to reinstate this case and request that the Court adjudicate the Architect Defendant's objection to the Reconsidered Determination. In such an event, the Court may sustain or overrule the objection.

7.      The Architect Defendant shall, no later than twenty (20) days after receiving a Determination to which no objection has been made, ten (10) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or ten (10) days after any decision by the Court overruling a filed objection, whichever is earliest, seek a Court order for checks withdrawing the amounts identified by the United States or the Court (in the event of an objection) for payments to aggrieved persons. Instructions for the delivery of such payments shall be provided to the Clerk of Court by the United States. In no event shall the aggregate of all such checks exceed the amount of the Architect Settlement Fund, including accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to the United States the release at Appendix A.

8.      In the event that less than the total amount in the Architect Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified during the term of this Stipulation, then any remainder in the Architect Settlement Fund shall be paid to the United States Treasury consistent with the terms of 28 U.S.C. § 2042.

### III. CIVIL PENALTY

9.      Within 30 days of the date of the entry of this Stipulation, the Architect Defendant shall pay a civil penalty of FIVE THOUSAND DOLLARS ($5,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The Architect Defendant shall pay said sum by submitting a check made payable to the "United States of America" to counsel for the United States.

### IV. DOCUMENT RETENTION REQUIREMENT

10.     For the term of this Stipulation, the Architect Defendant is required to preserve all records in its possession related to this Stipulation for One River Place and Silver Towers.

8

Upon reasonable notice to the Architect Defendant, representatives of the United States shall be permitted to inspect and copy any records of the Architect Defendant bearing on compliance with this Stipulation at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Architect Defendant from such inspections.

## V. TERM OF STIPULATION

11. This Stipulation shall remain in effect for one (1) year following execution of this Stipulation. By executing this Stipulation, the parties agree that in the event that the Architect Defendant engages in any future conduct occurring during the term of this Stipulation that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

12. The term of this Stipulation may be extended by the mutual written agreement of the parties.

13. In the event the United States reinstates this Action, as contemplated by the Settlement Stipulation, the Architect Defendant agrees pursuant to Federal Rule of Civil Procedure 15(a)(2) that the United States may amend the complaint to assert any claims that have not been released under this Stipulation.

14. The parties agree that the only appropriate remedy for either party's failure to perform any non-monetary obligation contained in this Stipulation is specific performance.

15. The United States and the Architect Defendant shall endeavor, in good faith, to resolve any differences regarding interpretation of and compliance with this Stipulation prior to bringing such matters to the Court for resolution.

## VI. TIME FOR PERFORMANCE

16. Any time limits for performance imposed by this Stipulation may be extended by the mutual written agreement of the United States and the Architect Defendant.

## X. MISCELLANEOUS

17. The United States and the Architect Defendant will each bear its own costs and attorney's fees associated with this litigation.

18. Counsel for Costas Kondylis release and forever discharge the United States from any and all claims and liabilities arising directly or indirectly from entering into this Stipulation on behalf of Costas Kondylis.

19. The United States and the Architect Defendant understand and agree that this Stipulation and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

*For the United States*:

GEOFFREY S. BERMAN
United States Attorney

By: _____
LI YU
NATASHA W. TELEANU
JACOB LILLYWHITE
STEVEN KOCHEVAR
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. Nos. (212) 637-2734/2528/2639/2715
Fax. Nos. (212) 637-2786
Li.Yu@usdoj.gov
Natasha.Teleanu@usdoj.gov
Jacob.Lillywhite@usdoj.gov
Steven.Kochevar@usdoj.gov

*For the Architect Defendant*:

MILBER MAKRIS PLOUSADIS &
SEIDEN, LLP

By: _____
CHRISTOPHER A. ALBANESE
JEFFREY J. FOX
709 Westchester Avenue, Suite 300
White Plains, New York 10604
Tel. No. (914) 681-8700
Fax. No. (914) 681-8709
calbanese@milbermakris.com
jfox@milbermakris.com

SO ORDERED:

Vernon S. Broderick  9/23/2019
United States District Judge

11

# APPENDIX A

## RELEASE FORM

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Stipulation of Settlement entered in *United States of America v. Silverstein Properties, Inc., et al.*, 17 Civ. 00076 (VSB) (S.D.N.Y.), I hereby release _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the above-named parties shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)


_____
(Print name)


_____
(Date)